Michael McCRAY

v.

The **UNITED STATES.**

No. 363–82C.

United States Claims Court.

Sept. 9, 1983.

Paul A. Kiefer, Washington, D.C., for plaintiff; Kiefer & Morrison, Washington, D.C., of counsel.

Glenn E. Harris, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant; Thomas P. Tielens, LCDR, Office of the Judge Advocate General, Department of Navy, of counsel.

## OPINION

LYDON, Judge:

In this military pay case, plaintiff, a former United States Marine Corps enlisted man, challenges a majority determination by the Department of the Navy Regional Physical Evaluation Board (RPEB), which determination received the concurrence of the Department of the Navy Physical Review Council (PRC), denying plaintiff physical disability retirement or physical disability severance benefits on the ground that his disabilities were incurred while he was in an unauthorized absence status. The dis-

positive issue in this case, as refined during the course of oral argument, is whether the RPEB was, under the circumstances, permitted to make an "unauthorized absence" status determination. Both parties, conceding there are no material facts in dispute, have moved for summary judgment. After consideration of the briefs filed by the parties and oral argument relative thereto, it is concluded that defendant's cross-motion for summary judgment should be granted.

## I.

Plaintiff enlisted in the Marine Corps and entered on active duty on March 27, 1981. He was at the time 22 years of age. His enlistment was for a term of 4 years. On July 21, 1981, plaintiff reported to a service training school at Camp Geiger, North Carolina.

On August 9, 1981, a Sunday, plaintiff was returning to Camp Geiger from "liberty," i.e., authorized absence. He was authorized to be absent until 2200 hours (10:00 p.m.). At the time of his return, two marine privates, Thomas Crowdrey (Crowdrey) and Phillip Sisk (Sisk), were about to leave the Camp in a car Sisk had borrowed. Plaintiff inquired where they were going. Sisk advised him that they were going to the Holiday Inn, a 10 minute drive, some 5 or 6 miles from Camp, to pick up some of his personal effects. Sisk told plaintiff they would return directly to the Camp thereafter and that plaintiff would be returned to Camp in time before his liberty expired at 2200 hours. The record indicates that plaintiff left the Camp with Sisk and Crowdrey at about 2130 hours (9:30 p.m.).

After picking up his gear, Sisk, the driver, over the protests of plaintiff and Crowdrey, drove to the Globe skating rink and thereafter to the Phoenix cocktail lounge where he treated plaintiff and Crowdrey to three beers during the next 45 minutes to an hour. During this period the record indicates plaintiff and Crowdrey requested on three or four occasions, that Sisk return them to Camp. The record also indicates that plaintiff and Crowdrey felt they had no other way to return to Camp since they had no money for a taxi and they felt it was too far to walk back to Camp. After leaving the cocktail lounge, the group started back to Camp. On the way they were involved in a one-car accident in which plaintiff sustained severe injuries. The record indicates the accident occurred on or before 0200 hours (2:00 a.m.) on August 10, 1981.

Plaintiff's commanding officer did not officially document the fact that plaintiff was not in Camp where he should have been on August 9, 1981 at 2200 hours and thereafter. Plaintiff's platoon and company maintained log books which, in the normal course of business, would record unauthorized absences. None of these log books recorded an unauthorized absence for plaintiff on August 9–10, 1981. The log books did record that plaintiff was in the hospital as of 0615 hours (6:15 a.m.) on August 10, 1981. No disciplinary action was taken against plaintiff for his absence from Camp after 2200 hours on August 9, 1981. The plaintiff's commanding officer, exercising his discretion, felt it appropriate, under the circumstances, to forego any court martial or administrative (loss of pay) charges against plaintiff for his unauthorized absence. Applicable Marine Corps regulations clearly authorize a commanding officer to excuse the unauthorized absence of a marine under his control. *Marine Corps Individual Records Administration Manual* (IRAM), Par. 40092.C (1982). A statement by the commanding officer in the record indicates that plaintiff was told what the liberty hours were; that plaintiff was in an unauthorized status (UA) after 2200 hours on August 9, 1981; and that plaintiff was not authorized to leave the Camp area after 2200 hours. The commanding officer's statement also noted that although plaintiff was in a UA status, subsequent to 2200 hours, this fact did not interfere materially with his training. This latter determination probably was responsible for the exercise by the commanding officer of his discretion not to press for disciplinary action against plaintiff. The commanding officer made his decision not to press for discipli-

nary action against plaintiff despite the recommendation of the Report of the Investigating Officer that disciplinary action be taken against plaintiff for violation of Article 86 (unauthorized absence) of the Uniform Code of Military Justice, 10 U.S.C. § 886 (1976).

Plaintiff's injuries from the automobile accident rendered him unfit to perform his duties. Accordingly, he went before a RPEB. After a hearing, the RPEB, on or about April 26, 1982, concluded that plaintiff was unfit for duty because of physical disability. However, the majority of the RPEB also concluded that since his disabilities were incurred during a period of unauthorized absence, he was ineligible for physical disability retirement or physical disability severance benefits under the provisions of 10 U.S.C. § 1207 (1976).[1] The majority's "Rationale" stated in pertinent part:

It will be noted that the Jacksonville Holiday Inn, Globe Skating Rink, and Phoenix Lounge are all within relatively easy walking distance of the U.S. Marine bus route (no fee) between Camp Lejeune and Camp Geiger. Yet, apparently, no attempt was made to walk to this bus route for the purpose of catching a bus to Camp Geiger. Additionally, it would not be unreasonable to expect Marines finding themselves in the situation described in the hearing, to return on foot from the Holiday Inn or Phoenix Lounge to Camp Geiger. Yet apparently no attempt was made to return to Camp on foot nor to leave Sisk's car to catch another ride returning to Camp to shorten the period of UA. McCray was physically able to return to Camp Geiger without Sisk's assistance/cooperation and, prudently, should have done so.

On June 21, 1982, the PRC concurred in the findings and determination of the majority of the RPEB and did not concur in the findings of the minority of the RPEB.

The PRC directed that plaintiff be separated from the Service as physically unfit to perform his service duties without entitlement to disability retirement or physical disability severance benefits. Plaintiff was separated ("General Discharge Under Honorable Conditions") from the Marine Corps on June 29, 1982 because of "Physical Disability without severance pay (not in line of duty)." At the time of separation, plaintiff had active duty service, on his 4-year enlistment term, of 1 year, 3 months and 2 days.

## II.

Plaintiff conceded at oral argument that the procedures attendant to the RPEB proceedings were proper. Such a concession is supported by the record of the RPEB proceedings and applicable case law as is demonstrated below.

 It is noted that the RPEB's function is to investigate the possibility that a serviceman is suffering from a service-connected disability. The RPEB does not sit as an adversary tribunal, and it does not have the procedures of such a tribunal. A hearing before a RPEB is not a trial or contest; it is an inquiry concerning entitlement to disability benefits. The purpose of a RPEB is to get at the truth of the matter. *See Robertson v. Chambers,* 341 U.S. 37, 39, 71 S.Ct. 547, 548, 95 L.Ed. 726 (1951); *Brown v. United States,* 184 Ct.Cl. 501, 510, 396 F.2d 989, 995–96 (1968). Consistent with the investigatory nature of its administrative function, the RPEB relied on records, written statements and other materials. In the hearing before the RPEB, plaintiff was represented first by military counsel and later by civilian counsel.

 At the RPEB hearing, plaintiff challenged two statements received by the RPEB on the ground that the statements

---

1. The minority member of the RPEB stated his "Rationale" as follows:

"The MINORITY member accepts as a defense against the charge of UA (which was never entered), that he had no intention of committing the offense and was effectively prevented

from returning in time solely by the behavior of PFC Sisk. In that case, a finding of UA is not made and therefore the member's injuries were incurred in line of duty and were not due to his own misconduct."

were hearsay.[2] Plaintiff asked that the signatories of these statements be called as witnesses for cross-examination purposes. The two individuals concerned were not called as witnesses at the RPEB hearing. Plaintiff, in his brief, cites this failure to call them as witnesses as significant procedural error. However, during oral argument plaintiff conceded that the matters to which the statements of these individuals were addressed were resolved at the RPEB hearing and were therefore immaterial to the resolution of the issue at hand. In any event, plaintiff provided no explanation of how the testimony of these two individuals would have been favorable and material, *i.e.,* that the presence of these missing witnesses would have affected the outcome of the hearing. *See United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).[3] Under such circumstances, plaintiff's procedural error contention lacks substance.

Plaintiff's basic contention is that the RPEB lacked authority to make an unauthorized absence determination in the face of the commanding officer's failure to do so. In essence, plaintiff's position is that since the commanding officer did not officially document the fact that plaintiff was in an unauthorized absence status at the time of the accident, the RPEB could not make any such determination, and therefore it had to accept as a fact, regardless of the evidence before it, that plaintiff was in an authorized absence status at the time of the accident. Plaintiff cites no case law[4] in support of his position, and those portions of the applicable regulations he cites in support thereof are found, on careful reading, not to support his position.

It is clear that under 10 U.S.C. § 1207 (1976) a serviceman is not entitled to disability retirement if his disability was incurred during a period of unauthorized absence. It is equally clear that § 1207, *supra,* requires the Secretary of the Navy, in this case, to make that determination. Further, 10 U.S.C. § 1216 (1976) directed the Secretary of the Navy to prescribe regulations relative to disability retirement determinations. Such regulations were issued by the Secretary of the Navy under the heading *Disability Evaluation Manual,* SECNAVINST 1850.4 (June 23, 1977).

Part II of the *Disability Evaluation Manual* is captioned, *"Policy Pertaining to Disability Evaluation"*. Section 0202, under this caption, provides that a serviceman will be excluded from receiving disability benefits under 10 U.S.C. Chapter 61 if the disability is incurred during unauthorized absence. Section 0202 provides in pertinent part:

> c. Unauthorized absence. Any absence from duty without authority such as contemplated under articles 85, 86 and 87 of the Uniform Code of Military Justice (10 USC ch. 47), or such as was contemplated by the provisions of the Ar-

---

**2.** The use of hearsay evidence in administrative hearings such as is involved in this case does not, *per se,* taint the administrative process. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Case law clearly recognizes that use of hearsay evidence by administrative bodies such as a RPEB is not inherently objectionable. *See Duvall v. United States,* 227 Ct.Cl. 245, 250, 647 F.2d 131, 134 (1981); *Cooper v. United States,* 226 Ct.Cl. 75, 76, 78, 639 F.2d 727, 730 (1980); *Fairfield Scientific Corp. v. United States,* 222 Ct.Cl. 167, 176, 611 F.2d 854, 859 (1979).

**3.** At oral argument, plaintiff also suggested that failure to call the commanding officer as a witness at the RPEB hearing constituted procedural error. The record, fairly read, shows that plaintiff's counsel did not request the commanding officer as a witness because he had

talked with him on the phone, found him to be very cooperative relative to the matters in issue, and felt it was not necessary to cross-examine him.

**4.** Defendant cites an unpublished recommended decision of the Trial Division, United States Court of Claims, issued on September 7, 1982, which was subsequently entered as a final judgment by the United States Claims Court on October 6, 1982, which held, in substance, that a PEB had the authority as well as the responsibility, to decide whether disability was incurred in the line of duty, and was not bound by a previous determination by the Army Advocate General that the disability of a serviceman was caused by his misconduct. *Akins v. United States,* (No. 269–78, Oct. 6, 1982), *aff'd* 706 F.2d 320 (Table) (CAFC 1983).

ticles for the Government of the Navy, which were in effect prior to 1951, shall be deemed to have been an unauthorized absence. When a disability is incurred at any time during a period of unauthorized absence, regardless of whether the absence interfered with the member's military duties, the member is excluded from receiving benefits under 10 USC ch. 61.

Section 0801 of the *Manual of the Judge Advocate* (JAG Manual) states in pertinent part:

> Physical evaluation determinations are made independently and are not controlled by misconduct-line of duty findings or conclusions recorded under the provisions of this Manual. They are instead controlled by regulations contained in the Disability Evaluation Manual (SECNAVINST 1850.4). As a practical matter, such determinations for physical review purposes must rest upon the evidence available. Generally this will be those facts which have been officially recorded and are on file within the Department of the Navy. This would include reports and investigations submitted in accordance with the provisions of this Manual.

Section 0802(2) of the JAG Manual which deals with "Line of Duty Investigations," notes that under 10 U.S.C. § 1207, a serviceman is ineligible for disability retirement if the disability was incurred during a period of unauthorized absence, "regardless of length of such absence and regardless of whether such absence constituted a material interference with the performance of his required military duties."

The above sections from the JAG Manual are clearly not supportive of plaintiff's position. Appendix D to SECNAVINST 1850.4 (June 23, 1977) references these JAG Manual sections and nowhere in any of these regulations (*i.e.,* the JAG Manual and the Disability Evaluation Manual) is there any indication, hint or inference that a RPEB is precluded from making an unauthorized absence determination or that an unauthorized absence determination by a commanding officer is binding on a RPEB. Indeed,

the applicable regulations show that the RPEB is required to make such determinations, based on available evidence which can include the results of investigations ordered by the commanding officer in accordance with the *Manual of the Judge Advocate General.*

Plaintiff relies on Section 0203 of Part II of the *Disability Evaluation Manual* which is captioned *"Injury Cases—Line of Duty/Misconduct Determinations."* Paragraph b of this section reads as follows:

> It is the responsibility of the commanding officer or officer in charge of the individual concerned at the time of incurrence of an injury or disease to convene the necessary investigation or to take other appropriate action.

Plaintiff reads this language as precluding the RPEB from making an unauthorized absence determination in this case. However, when this language is read in the context of the totality of the *Disability Evaluation Manual,* SECNAVINST 1850.4, *supra,* it is clear that plaintiff's reading of this language is erroneous.

Appendix D to SECNAVINST 1850.4, *supra,* entitled *Guidance Regarding Central And Regional Physical Evaluation Board Findings* specifically requires the RPEB to make findings, *inter alia,* as to "whether or not the disability was incurred during a period of unauthorized absence * * *." *See also* section 0805 of SECNAVINST 1850.4, *supra,* which sets forth the *procedures* to be followed by the RPEB and the *findings* and determinations that the RPEB is required to make. Such required procedures by the RPEB runs counter to plaintiff's proposition that the RPEB when making disability entitlement determinations is subservient to the prior action or inaction of a commanding officer relative to the unauthorized absence status of a serviceman.

It is apparent that in the area of discipline, the commanding officer is the proper authority responsible for making unauthorized absence status determinations. It is equally apparent that in the area of entitlement to disability retirement, the determination of unauthorized absence status is

within the authority and responsibility of the RPEB.

The determination by the RPEB, concurred in by the PRC, that plaintiff's disabilities were incurred while in an unauthorized absence status is procedurally proper and legally correct. While the court is most sympathetic with plaintiff's plight, and were it sitting as a RPEB might well have found for plaintiff, it is not the court's function to substitute its judgment for that of the RPEB in disability entitlement determinations. *See Brown v. United States, supra,* 184 Ct.Cl. at 504, 396 F.2d at 992. It is only where the RPEB determination is arbitrary or capricious, or its findings unsupported by substantial evidence that the court will interfere with the disability determination of a RPEB. No such derogatory assertion can be supported by the record before the court in this case. Since the RPEB determination is not contrary to any statute or regulation, but is supported by substantial evidence, and is otherwise legally correct, it must be accepted by the court.

### III.

In light of the above discussion, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, with plaintiff's complaint to be dismissed.