James Fred DUVALL,

v.

The UNITED STATES.

No. 186–80C.

United States Court of Claims.

April 22, 1981.

Joan Bodner, San Francisco, Cal., attorney of record, for plaintiff; Redburn, Bodner & Palewicz, San Francisco, Cal., of counsel.

Lawrence S. Smith, Washington, D. C., with whom was Asst. Atty. Gen., Alice Daniel, Washington, D. C., for defendant; Myrna B. Silen, Washington, D. C., of counsel.

Before DAVIS, NICHOLS and KASHIWA, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge:

The issue that is decisive in this case is whether there is substantial evidence on the

record as a whole to support the decision of the Merit Systems Protection Board upholding the removal of plaintiff from government employment for making false statements and filing a false claim. For the reasons discussed herein, we find no substantial evidence to support the challenged decision.

This case is before the court on the parties' cross-motions for summary judgment. They waived oral argument. Plaintiff, James Duvall, was, when removed, a loan specialist in the Financing Division of the San Francisco District Office of the Small Business Administration (SBA). On July 20, 1977, Duvall submitted a travel voucher claiming reimbursement for expenditures connected with a change of duty transfer from New Orleans to San Francisco. The SBA denied an item claiming temporary lodging expenses from February 27, 1976 through March 27, 1976, on the grounds that Duvall's receipt indicated that the quarters were not temporary but were instead rented with an option to buy or lease for 2 years.

On August 19, 1977, Duvall requested a ruling from the Comptroller General on the SBA's decision denying the temporary quarters claim. After discovering that Duvall had made allegedly contradictory statements, the SBA decided to investigate the matter further. Based on the investigation results, the SBA gave Duvall advance notice of a proposed termination for violation of SBA standards of conduct.

This notice letter charged Duvall with (1) making false statements and falsifying records in his claim for reimbursement for temporary quarters, and (2) making false statements to SBA investigators during the course of an official investigation. On December 27, 1978, Duvall presented an oral reply to an SBA hearing officer. On February 26, 1979, the SBA issued a final decision authorizing Duvall's removal. On March 2, 1979, Duvall appealed to the Merit Systems Protection Board (board) which by decision on October 23, 1979, upheld the removal. On January 28, 1980, the board denied Duvall's request for reconsideration,

and Duvall filed suit in this court on April 21, 1980.

The facts of this case are not at all clear. In essence, the controversy involves conflicts in testimony between Duvall and hearsay evidence presented by SBA Inspector Ronald Pomerantz; also between the evidence of the hearsay informants presented through Pomerantz, and presented otherwise. Duvall testified that he spent approximately 10 days traveling cross-country pulling a trailer containing a few household goods. The bulk of his goods were sent ahead by moving van and it is undisputed that these goods were placed in storage and that Duvall rented space at the San Francisco Motel and Trailer Court until the end of March. Shortly after arriving the Duvalls learned of rental premises at 59 Skyview Way and began negotiations with the landlord, Jesus Cortes. These premises contained a stove and a refrigerator and Duvall testified that he viewed them as being partially furnished, because in his part of the country, when a landlord supplied such appliances the apartment was considered partially furnished.

Duvall stated his objective was to obtain a 3-year lease but Cortes desired a 1-year lease as Cortes was not prepared to enter into a long-term commitment for the premises. According to Duvall's testimony, during the period February 24–26, 1976, Duvall and Cortes reached an oral understanding whereby Duvall would lease the premises for 3 months at $650 per month. He paid $650. This agreement appeared to reasonably serve the interests of both parties. Duvall said he considered this period to be temporary as he was not certain he would remain because of the high rent; because Cortes had not yet decided on how he would handle the property; and because Duvall was not sure whether he could obtain a long-term lease. During this period Duvall searched for other apartments.

Duvall further testified that on March 13, 1976, he received a printed lease from Cortes' realtor, Mr. Woodcock. Duvall altered the terms of the lease increasing its duration. Duvall considered this material

alteration to be a counteroffer which Cortes never accepted, as Cortes neither spoke to Duvall concerning the lease nor sent him a signed copy. After approximately one month of this arrangement, Duvall stated he reached an oral agreement for a lease at $400 per month. It is undisputed that at the end of March, Duvall did have his furniture delivered to the premises and the landlord removed a refrigerator and stove. According to Duvall, at this point in time he viewed the premises as his permanent lodging.

The travel regulations allowed Duvall reimbursement for temporary quarters at the place to which transferred, but not of course for permanent quarters. It seems to have been a tacit interpretation that reimbursable temporary quarters could be the same premises as the permanent quarters if the intent on first occupancy was that they should be temporary only. The fact that the 59 Skyview Way premises did in fact become permanent was thus not fatal to the claim if Duvall could show that the character of occupancy changed from temporary to permanent only at some time after he moved in. To establish this, he undertook to show that he did not have a lease during the period claimed, that he did not put his own furniture in, and that the landlord's "furniture," i. e., the refrigerator and stove, were not removed until the end of the claim period. It will be obvious that the situation was somewhat of a trap, though no doubt well intended, in that a difference of opinion as to his own and the landlord's subjective intent could easily produce a dispute, which, in turn, could easily flower into charges of fraud and deceit.

The SBA investigator Pomerantz presented at the hearing oral and written hearsay that conflicted with Duvall's testimony. According to that evidence, neither Cortes nor Woodcock said they viewed the original rental agreement as temporary. According to the investigator, Cortes stated he did not read a letter submitted by Duvall in support of Duvall's claim and he merely signed the document as a receipt for the first month's rent. Cortes allegedly stated the letter was inaccurate. According to Pomer-

antz, Woodcock stated that the lease agreement had been consummated on March 13, 1976, and that the first $650 payment by Duvall consisted of a $400 payment for the first month's rent and a $250 security deposit. However, regardless of the amount of the rental, Duvall understood that the most he was entitled to under SBA travel regulations for the period was $290.

In conducting the interview with Cortes, Pomerantz took field notes of the interview which were destroyed. A handwritten narrative compiled in his hotel room after the interview likewise was destroyed. The report submitted at the hearing was a typed derivative of the handwritten narrative. Cortes, however, declined to give Pomerantz a written statement and refused to sign Pomerantz' summary. In a later deposition which the government accepted as part of the record, Cortes characterized Pomerantz' summary as an incorrect account of the interview. Cortes also refuted portions of Pomerantz' testimony and affirmatively stated the parties did not treat the March 13, 1976, document as a lease.

Pomerantz' interview with Woodcock was similar in methodology. Pomerantz also destroyed his handwritten field notes and narrative, and submitted a typed version. There were two interviews with Woodcock and two signed statements. Pomerantz destroyed the original which was in Woodcock's handwriting and words. Pomerantz then submitted a second statement which Woodcock signed. Woodcock, however, characterized his interview with Pomerantz as a difficult one in which Woodcock felt Pomerantz attempted to present trick questions or repeat back answers with a meaning not intended by Woodcock.

In reaching its decision, the board gave Pomerantz' hearsay evidence great weight. The board found as false both Duvall's statement in a letter to the Comptroller General that his arrangement with Cortes was temporary, and the signed letter submitted by Duvall in support of that claim. Lastly, the board also found as false Du-

vall's statements during the investigation that (1) the landlord had removed furniture when the house actually had been unfurnished, and (2) no written lease existed.

█ Duvall attacks the decision of the board on a number of grounds. Specifically Duvall alleges that his removal was not based on substantial evidence, that the removal was arbitrary and capricious, and that the removal proceedings violated procedural due process. Because we find the charges against Duvall are not supported by substantial evidence, we need not address any of Duvall's other claims. In exercising this substantial evidence review, the court's role is not to hear the case de novo, but to review the administrative record and determine whether there is substantial evidence on the record as a whole to support the findings of the board. *E. g., Kowal v. United States*, 188 Ct.Cl. 631, 412 F.2d 867 (1969).

The evidence in support of the charges was hearsay testimony of SBA Investigator Pomerantz concerning alleged statements made by Duvall's landlord Cortes and Cortes' real estate agent Woodcock. The hearing officer that conducted the hearing died before he could render a decision. The record was then transferred to another hearing officer who rendered the decision on the basis of the record without opportunity of making any credibility determinations, including evaluations of the hearsay affiant Pomerantz. At least as to the disputed issues, there is no evidence in the record beyond Pomerantz' testimony.

Duvall contends this "[m]ere uncorroborated hearsay * * * does not constitute substantial evidence." *See Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229–230, 59 S.Ct. 206, 216–217, 83 L.Ed. 126 (1938). However, hearsay evidence can constitute substantial evidence, *see Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), and this court has held that hearsay evidence before an administrative agency may be admissible, relevant, and competent as well as provide substantial evidence. *Peters v. United States*, 187 Ct.Cl. 63, 71, 408 F.2d 719, 722–23 (1969).

█ *Peters,* however, cannot be read as granting an agency carte blanche authority to rely on rumors or bald assertions without any constraints. First, this court must determine whether on the particular facts of the case the board could accept the hearsay evidence as admissible, competent, and relevant. 187 Ct.Cl. at 71, 408 F.2d at 723. Second, the hearsay rule will not *per se* bar a holding that a finding is supported by substantial evidence as long as "the evidence upon which a decision is ultimately based is substantial and has probative value * * *." 187 Ct.Cl. at 70, 408 F.2d at 722 quoting *Morelli v. United States*, 177 Ct.Cl. 848, 853–54 (1966).

Soon after *Peters,* this court decided *Kowal v. United States, supra.* In that case, as here, the conflict was between oral testimony and hearsay, which, however, in *Kowal,* was at any rate sworn affidavits. We held the board could not prefer the affidavits unless the oral testimony was "inherently incredible." 188 Ct.Cl. at 641, 412 F.2d at 872. Concededly the court there had a complex set of facts before it, differing in many respects from the instant case; however, it does seem to stand for the proposition that hearsay normally will not prevail over oral testimony unless the latter is "inherently incredible" and in passing on that issue the court will consider the entire circumstances.

Slightly later yet comes *Jacobowitz v. United States*, 191 Ct.Cl. 444, 424 F.2d 555 (1970) in which a conflict again was presented between hearsay statements taken by investigators, which showed plaintiff, an IRS employee, had not called on taxpayers he said he had called on, and plaintiff's own testimony that he had called on them supported by oral testimony of three of the same taxpayers and written statements by others. We held that in an administrative proceeding the hearsay statements were admissible but they were not substantial. " * * * [I]t was not such relevant evidence as a reasonable mind might accept to support a conclusion." 191 Ct.Cl. at 458, 424 F.2d at 563.

Much as one can say against the hearsay testimony of Cortes and Woodcock as reported to the tribunal by Pomerantz, it is clear from the analysis in *Jacobowitz* we cannot call it inadmissible. Whether it is substantial is quite another matter. It lacks the internal corroboration of the *Peters* evidence where a number of affiants independently described and swore to shakedown techniques of a similar kind. The evidence as to Pomerantz' investigative methods is peculiar to this case and, if accurate, one hopes peculiar to Pomerantz. It affords a reason for disbelieving the statements he supplied not found in the cases cited. Duvall's story, on the other hand, is not inherently implausible, it is not refuted by incontestible facts of record, and if we disbelieve it, that can only be because we elect to believe Cortes and Woodcock as reported by Pomerantz, not Cortes and Woodcock as reported otherwise, Cortes and Woodcock as never sworn to by them and in whole or part repudiated by them. The record, however, casts grave doubts on the reliability of Pomerantz. Pomerantz destroyed both his handwritten field notes of the interview with Cortes and his handwritten narrative compiled in his hotel room after the interview. The report actually submitted was a typed derivative of his handwritten narrative. Additionally, Cortes refused to sign the original summary made by Pomerantz at the conclusion of the interview. Pomerantz' conduct of his interrogation of Woodcock was similarly suspect. Pomerantz destroyed his field notes and his handwritten narrative. There were two interviews with Woodcock and two signed statements. The original signed statement was prepared and signed by Woodcock. Pomerantz, however, destroyed this statement and substituted one which combined his words with those of Woodcock.

■ This investigative procedure used by Pomerantz—suitable more for an inquisition than for impartial investigation—does not appear reliably designed to ferret out the facts so that an agency could make an informal and reasoned decision. The probative value of the hearsay rests in part upon the credibility of the hearsay affiant. Af-

ter an objection was raised against the Pomerantz hearsay evidence, the original hearing officer who was able to observe Pomerantz indicated he planned to review the situation before rendering his decision. Yet no such credibility determination was made as the hearing officer died prior to rendering his decision, and the replacement only viewed the record. Additionally, the statements of Cortes and Woodcock taken after the hearing also cast doubts on Pomerantz' credibility. Admittedly, both of these individuals may have been friends of Duvall and thus may have desired to undo whatever damage their statements to Pomerantz had done, yet their statements do raise a question of the credibility of Pomerantz' evidence. A credibility determination by a hearing officer who had observed Pomerantz would have given Pomerantz' testimony greater weight. The absence of such credibility determinations affects the weight to be accorded to such hearsay evidence. *See Kowal v. United States, supra.* We do not dictate whether agencies should or should not hear a case de novo when a hearing officer dies prior to rendering a decision. The absence of such credibility determinations does, however, necessarily lessen the probative value of hearsay evidence where there is a dispute over its truthfulness.

■ In the instant case Duvall testified under oath before the board in response to the charges. The record as a whole shows that at most Duvall is guilty of resolving doubtful, factual, and legal conclusions in his own favor. Duvall's testimony, in fact, illustrates his confusion. "In my mind I was entitled to temporary quarters for up to a maximum of thirty days, and in my mind, temporary quarters were those that existed until you could get living on a permanent basis * * *. I was sufficiently concerned about whether this lease thing was going to finalize with Cortes that I retained my rental * * * at the New San Francisco Motel and Trailer Court * * * for this whole period." If this be so it would seem he might have claimed the motel as temporary quarters and averted the whole em-

broglio. Duvall's testimony and Cortes' deposition indicate a good faith belief by Duvall that the premises were temporary until Duvall and Cortes reached a long-term arrangement in late March. The letter submitted by Duvall to the Comptroller General and signed by Cortes demonstrates the same.

The board's finding as false the statement by Duvall that the landlord removed his furniture and Duvall had his delivered also is not supported by substantial evidence. Duvall did remove his furniture from storage and arrange for delivery to the premises. Likewise Cortes did remove the stove and refrigerator. Perhaps a stove and refrigerator "do not a furnished apartment make," but Duvall's characterization versus that of the SBA's is more a dispute over interpretation than a matter of fakehood.

Lastly, the board found as false the statement by Duvall that no written lease existed. The board cited to the March 13, 1976, lease and Duvall's letter to the Comptroller General wherein Duvall stated he had signed a lease. The board discredited Duvall's testimony that he believed the document was a counteroffer and never received it back signed by Cortes. The board instead referred to the existence of the lease and stated other witnesses' testimony corroborated the lease. The record, however, discloses that Pomerantz' hearsay evidence provided the only corroboration. On the other hand, Duvall's direct testimony combined with the statements of Cortes and Woodcock (those not made through Pomerantz) discrediting Pomerantz' evidence weigh heavily against the board's finding. On the basis of the record, the court holds that there is not substantial evidence to support the finding of the board that Duvall's statement concerning the lease was false.

It is further to be noted that in a case of employee misconduct in filing of false documents, our cases require as part of the substantial evidence a showing that the falsity was willful, and thus a falsity that could have been innocent or inadvertent is insufficient. In *Kowal, supra,* we held a statement was not false which the alleged offender believed to be true in good faith or could easily have so believed on the record facts. In what is perhaps our leading case on employee misconduct by presentation of a false claim, *Urbina v. United States,* 180 Ct.Cl. 194 (1967) (no unofficial report, as was then true of so many of our leading cases), we speak in terms of a requirement of "intent to defraud" or "the knowing presentation of a claim that is false," or "something in the nature of 'the necessary scienter' or 'guilty knowledge.'" *Id.* at 211. And at 219—

> If, on the other hand, the executive branch wishes to punish its veterans preference employees for false statements made without guilty intent, at least, that purpose should be put up to them squarely in the notice of proposed removal. Such a Draconian rule may raise constitutional issues under some circumstances.
> * * *

In the cited cases, and in the case at bar, the question of a negligent false statement did not and does not arise and we are not to be read as saying such a statement would be insufficient ground for removal. The charges did not state that the false statements were willful or negligent and the regulation cited did not limit its prohibition to willful or negligent false statements. These appear to be the circumstances the *Urbina* language relates to, and guilty knowledge or "scienter" is what *Urbina* calls for, as a matter of substantial evidence.

Thus, in the absence of any credibility determinations concerning either Pomerantz or Duvall by a trier of fact who could observe their demeanor, and on the basis of Duvall's testimony and the statements of Cortes and Woodcock taken after the hearing when weighed against the hearsay evidence of Pomerantz, this court concludes that the evidence relied upon by the board in reaching its decision was not substantial. Admittedly, there is an inconsistency between Duvall's letter to the Comptroller General wherein he stated he signed a lease

and his testimony that the March 13, 1976, document was not a lease but a counteroffer. That inconsistency, alone, however, shows confusion but is not sufficient to support charges of filing a false claim. The record discloses that this case actually involves a question of differing interpretations of travel regulations which were not readily understandable by Duvall or even by us, as to a most material point. The SBA did not present sufficient credible evidence to show anything more than an honest dispute. In *Peters*, although we upheld the decision of the agency, we commented that it was "hardly a model of thorough administrative procedure at either the agency or appellate level." 187 Ct.Cl. at 73, 408 F.2d at 724. That comment likewise is applicable to this case. We are, fortunately for us, not required to find the facts, to decide whether the quarters were temporary, whether Duvall got into the web he was tangled in by practicing to deceive, or whether he or Pomerantz was telling the truth if either was. All we are saying is that the ignominious termination of a government career for false claims must be supported by evidence more substantial than that which satisfied the board in this case.

Therefore, defendant's motion for summary judgment is denied and Duvall's cross-motion is granted. The reinstatement of Duvall is hereby ordered and under Rule 131(c) the case is remanded to the trial division for a calculation of damages. This decision, however, is without prejudice to any subsequent SBA action against Duvall having prospective effect, with respect to the occurrences involved in the present case, if SBA still believes plaintiff falsified and feels that it can prove that proposition.