EMBERS OF SALISBURY, INC., & another vs. ALCOHOLIC
BEVERAGES CONTROL COMMISSION.

Suffolk. September 10, 1987. — January 14, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Alcoholic Liquors,* Alcoholic Beverages Control Commission, License, Revocation of license. *Evidence,* Administrative proceeding, Hearsay, Testimony at prior proceeding, Corroborative evidence, Relevancy and materiality, Credibility of witness, Cross-examination. *Constitutional Law,* Confrontation of witnesses. *Words,* "Substantial evidence."

A transcript of testimony by a defendant (the minor) at her criminal trial, which was corroborated in certain particulars by the stipulated testimony of other persons, constituted substantial evidence warranting a finding by the Alcoholic Beverages Control Commission that the minor was served alcoholic beverages at establishments operated by two liquor licensees, notwithstanding contentions of the licensees that the minor had falsified her trial testimony in an attempt to establish that she was intoxicated at the time of her alleged crime, assault with intent to murder, and that her self-serving testimony was inherently unreliable. [528-531] LYNCH, J., dissenting.

In a proceeding before the Alcoholic Beverages Control Commission culminating in the suspension of two liquor licenses as a penalty for the licensees' having served alcoholic beverages to a person nineteen years of age (the minor), the commission's admission in evidence of a transcript of certain testimony by the minor at her trial on criminal charges did not deprive the licensees of their constitutional and statutory rights to confront and cross-examine the minor, where the licensees did not invoke their right to call the minor as a witness but chose, instead, to rely on the stipulated testimony of other persons. [531]

CIVIL ACTION commenced in the Superior Court Department on November 15, 1985.

The case was heard by *John L. Murphy, Jr.,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kathleen E. Coffey* for the plaintiffs.

*Charles F. Walker,* Assistant Attorney General, for Alcoholic Beverages Control Commission.

HENNESSEY, C.J. As a result of a hearing held on May 28, 1985, the licensing board of Salisbury (board) found that on July 9, 1983, the appellants-licensees[1] (licensees) had violated G. L. c. 138, § 34 (1986 ed.), by serving alcohol to a minor, one Holly Kozec (Kozec), then nineteen years of age. Accordingly, the board voted under G. L. c. 138, § 64, to suspend the licensees' liquor licenses for three days. Pursuant to G. L. c. 138, § 67 (1986 ed.), the licensees appealed the board's action to the Alcoholic Beverages Control Commission (ABCC) which, after a de novo hearing on August 1, 1985, upheld the board's action. The licensees then sought judicial review of the ABCC's decision. The Superior Court denied the licensees' motion for summary judgment and granted summary judgment in favor of the ABCC. The licensees appealed from the Superior Court's judgment, and this court took the case on its own motion. We affirm.

The evidence relied on by the board and by the ABCC in finding that the licensees had served alcohol to a minor consisted primarily of a transcript of the testimony of Kozec, who testified at her criminal trial that she was nineteen years old on July 9, 1983, and that on that date she had been served alcoholic beverages at the licensees' establishments. The facts of Kozec's case, which are set forth in *Commonwealth* v. *Kozec,* 399 Mass. 514, 515-516 (1987), are relevant to this case only in so far as the licensees argue that Kozec, who was on trial for assault with intent to murder, falsified her testimony regarding her consumption of alcohol in an attempt to establish that she was intoxicated at the time of the alleged crime, and that her self-serving testimony is inherently unreliable. Accordingly, they contend that there is not substantial evidence to support the ABCC's findings.

---

[1] Embers of Salisbury, Inc., doing business as Kon Tiki Lounge, and Joseph Grasso, doing business as Tic-Toc Club.

The only other evidence before the ABCC consisted of a stipulation between the parties as to the anticipated testimony of seven other witnesses. The testimony of four of these, owners and managers of the licensees' establishments, would have tended to disprove Kozec's testimony. The other three, police officers, would have testified that they saw Kozec at the Salisbury police station following her arrest; that she appeared intoxicated; that she told them that she had been drinking that night at the licensees' establishments; and that she told them that she was underage.[2]

On appeal, the licensees contend that the ABCC's decision is not supported by substantial evidence; and that they were deprived of the opportunity to confront and to cross-examine Kozec, in violation of the rights guaranteed them by G. L. c. 30A, § 11 (3) (1986 ed.), and by the Federal and State Constitutions.

The standard of review by this court of the ABCC's decision to suspend licensees' liquor licenses is the substantial evidence test. *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.,* 380 Mass. 919, 924 (1980) (revocation case). *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n,* 372 Mass. 152, 153 (1977). We may set aside the ABCC's decision if it is "[u]nsupported by substantial evidence." G. L. c. 30A, § 14 (7) (e) (1986 ed.).[3] "'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6) (1986 ed.).

The ABCC's decision is supported by substantial evidence. The transcript of Kozec's testimony, admitted without objection from the licensees,[4] included testimony to the effect that

---

[2] Although it is not entirely clear from the licensees' briefs and arguments, we infer that their position is that the police officers' testimony as to Kozec's statements to them suffers from the same infirmity as the transcript. Based on the view we take of the probative value of the transcript, we need not consider the status of Kozec's statements to the police.

[3] The licensees do not contend that the other review standards of G. L. c. 30A, § 7, are applicable to the instant case.

[4] The licensees' position appears to be not that the transcript may not be considered at all, but that it is insufficient to support the ABCC's findings, i.e., their contention goes not to the admissibility of the evidence but to its sufficiency.

Kozec, who was then underage, had been served alcoholic beverages by the licensees' establishments. Although the stipulated testimony of the licensees' witnesses tended to disprove Kozec's testimony, the ABCC was entitled to believe the one and disregard the other. "It is for the agency, not the courts, to weigh the credibility of witnesses and to resolve factual disputes. 'A court may not displace an administrative board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *School Comm. of Wellesley* v. *Labor Relations Comm'n,* 376 Mass. 112, 120 (1978), quoting *Labor Relations Comm'n* v. *University Hosp., Inc.,* 359 Mass. 516, 521 (1971). See also *Universal Camera Corp.* v. *NLRB,* 340 U.S. 474, 488 (1951). This court may not disturb the ABCC's findings unless our review of the record as a whole fails to disclose substantial evidence to support it. Clearly, the testimony of Kozec, if believed, amply supports the ABCC's findings, and it is the ABCC, not this court, which is "the sole judge of the credibility and weight of evidence before it during the administrative proceeding." *Number Three Lounge, Inc.* v. *Alcoholic Beverages Control Comm'n,* 7 Mass. App. Ct. 301, 309 (1979).

The licensees argue, however, that the transcript of Kozec's testimony does not constitute substantial evidence to support the ABCC's findings, first, because it is inherently unreliable, and second, because uncorroborated hearsay evidence does not constitute substantial evidence under our opinion in *Sinclair* v. *Director of the Div. of Employment Sec.,* 331 Mass. 101 (1954).

The licensees do not and could not plausibly argue that the ABCC is bound by the rules of admissibility of evidence observed by courts.[5] Rather, they say that, because Kozec was trying to establish her intoxication as a defense to a serious

---

[5] General Laws c. 30A, § 11 (2) (1986 ed.), provides that, except where otherwise provided by law, "agencies need not observe the rules of evidence observed by courts . . . . Evidence may be admitted and given probative effect only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs."

criminal charge, she had every incentive to lie regarding her procurance and consumption of alcohol. This contention, however, goes to the credibility of and the weight to be given such testimony, a matter squarely within the ambit of the ABCC's fact-finding responsibility, and we cannot say, as matter of law, that Kozec's testimony was insufficient to support the ABCC's findings.

We think that the licensees misconstrue the teaching of *Sinclair, supra*. Although in that case we said that "[i]f the pertinent evidence is exclusively hearsay, that does not constitute 'substantial evidence' even before an administrative tribunal," *Sinclair, supra* at 103, the line we were drawing was not between evidence admissible in a court and evidence that is inadmissible because of the rules of evidence observed by courts, but between evidence having indicia of reliability and probative value and that which does not. The United States Supreme Court similarly advanced the broad proposition that "[m]ere uncorroborated hearsay or rumor does not constitute substantial evidence," *Consolidated Edison Co.* v. *NLRB,* 305 U.S. 197, 230 (1938), but later explained that "[t]he contrast the Chief Justice [Hughes] was drawing [in the above quoted language] was not with material that would be deemed formally inadmissible in judicial proceedings but with material 'without a basis in evidence having rational probative force.' This was not a blanket rejection by the Court of administrative reliance on hearsay irrespective of reliability and probative value. The opposite was the case." *Richardson* v. *Perales,* 402 U.S. 389, 407-408 (1971), quoting *Consolidated Edison Co., supra* at 230.

In this case, as in *Perales,* the hearsay evidence on which the agency relied was available to either party, and the declarant was "subject to subpoena and to the very cross-examination that the claimant asserts he has not enjoyed." *Id.* at 407. The transcript of Kozec's trial testimony on which the ABCC based its findings, although hearsay, was a record of testimony given by Kozec in open court, under oath, and subject to cross-examination. Although we might reach a different conclusion as to the reliability of Kozec's testimony were we to consider the

matter de novo, we cannot say that the ABCC was in error in assigning probative weight to the transcript of her testimony. Moreover, the stipulated testimony of the licensees themselves and of the police officers corroborated certain particulars of Kozec's testimony. The licensees would have testified that Kozec was employed as a barmaid by one of their licensed establishments, the Tic-Toc Club; and the police officers would have testified that Kozec appeared to be under the influence of alcohol when they observed her at the police station following her arrest.

The licensees contend that the admission of the transcript of Kozec's testimony deprived them of the opportunity to confront and cross-examine Kozec in violation of the rights guaranteed them under the Federal and State Constitutions and under G. L. c. 30A, § 11 (3). This contention cannot stand. Under G. L. c. 30A, § 11 (3), the licensees had "the right to call and examine witnesses, to introduce exhibits, to cross-examine witnesses who testify, and to submit rebuttal evidence." The licensees could have called Kozec[6] as a witness and examined her regarding the events to which her transcribed testimony related. They were entitled to a subpoena, if necessary, to compel Kozec's attendance and testimony. G. L. c. 30A, § 12 (3) and (5) (1986 ed.). The licensees chose not to call Kozec and rested on the stipulated testimony of other witnesses. The right to confront and cross-examine adverse witnesses is not self-executing. Having failed to invoke their right to call Kozec as a witness, they cannot be heard to complain of the consequences. Cf. *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination,* 377 Mass. 392, 402-403 (1979) (no unfairness where witness failed to appear at administrative proceeding, where aggrieved party failed to pursue right to enforce subpoena compelling attendance and testimony).

*Judgment affirmed.*

---

[6] The licensees do not claim that Kozec was unavailable to testify, merely that it was not incumbent upon them to produce her at the hearing.

LYNCH, J. (dissenting). In affirming the judgment of the Alcoholic Beverages Control Commission (ABCC) the court permits the ABCC to rely upon the uncorroborated hearsay statement of a witness in a criminal trial for a finding essential to its judgment (that the licensees served alcohol to a minor) where the fact of the sale was not a contested issue in the criminal trial; where the licensees were not participants in the criminal trial or in privity of interest with any of the parties in the criminal trial; where it was in the witness's interest to suggest that she was under the influence; and, where the ABCC has made no ruling on why it relied on this evidence. In so concluding, the court has blurred the distinction between credibility and reliability and overruled a long-standing decision of this court. I believe the court reaches this erroneous conclusion by failing to establish correctly what quantum of evidence is necessary for it to be given probative effect within the meaning of G. L. c. 30A, § 11 (2) (1986 ed.).

It is indisputable that administrative agencies need not observe the rules of evidence that pertain in the courts. It does not follow, however, that the power of an agency to accept or reject evidence is totally uncircumscribed and insulated from effective appellate review. The question upon review until now has been whether this is "the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." G. L. c. 30A, § 11 (2). See *Dwyer* v. *Commissioner of Ins.*, 375 Mass. 227, 236 (1978); *AAA Movers* v. *Department of Pub. Utils.*, 354 Mass. 390, 393 (1968). The court today adds the consideration whether the evidence is so inherently unreliable as to fail to meet that test. It appears to me that the addition of the modifying words "so inherently unreliable" adds a presumption of reliability to hearsay not previously thought to be necessary or appropriate.

The question of the extent to which hearsay evidence might constitute substantial evidence is by no means a new one. Briefly summarized, various jurisdictions have adopted one of three basic approaches designed to ensure the trustworthiness or reliability of the evidentiary basis of agency decisions. The first approach has been to require corroboration regardless of

the character of the hearsay. See, e.g., *Goodman* v. *Common-wealth,* 98 Pa. Commw. Ct. 371, 375-376 (1986) (arrest and police reports submitted in evidence without direct testimony or independent corroboration did not provide adequate support for denial of application for renewal of firearms permit). The second, and until recently, more common approach has been adherence to the "residuum rule." As stated in the landmark case which originated the rule, "[the New York statute] may be taken to mean that while the commission's inquiry is not limited by the common law or statutory rules of evidence or by technical or formal rules of procedure, and it may in its discretion accept any evidence that is offered, still in the end there must be a residuum of legal evidence to support the claim before an award can be made." *Carroll* v. *Knickerbocker Ice Co.,* 218 N.Y. 435, 440 (1916).

Both approaches have been criticized by Professor Davis, who delineates the third approach to ensuring the reliability of evidence. "Rejection of the residuum rule does not mean that a reviewing court must refuse to set aside a finding based upon incompetent evidence; *it means only that the court may set aside the finding or refuse to do so as it sees fit, in accordance with its own determination of the question whether the evidence supporting the finding should be deemed reliable and substantial in the circumstances*" (emphasis added). 4 K.C. Davis, Administrative Law § 16.6 (1980 ed.). Accordingly, courts are reluctant to let stand agency decisions that depend upon evidence that, although arguably admissible under agency practice, lacks a firm basis of reliability. See *Credit* v. *Whitfield,* 488 So.2d 1064 (La. Ct. App. 1986) (although hearsay is generally admissible in unemployment compensation proceedings, where employer bears burden of proving employee misconduct, employer may not base entire case on hearsay when claimant offers direct, contradictory evidence); *Higley* v. *Edwards,* 67 Or. App. 488 (1984), disapproved on other grounds, *Wiggett* v. *Oregon State Penitentiary,* 85 Or. App. 635 (1987) (in administrative hearing on allegations of deputy sheriff's misconduct by sexual contact with prisoner, unsworn and uncorroborated written statement of prisoner was inadmissible

hearsay, where it was only evidence on whether there had been sexual contact and prisoner did not appear at hearing).

The Massachusetts cases decided after adoption of G. L. c. 30A, § 11 (2), pretermitted reconsideration of the rule enunciated in *Sinclair* v. *Director of the Div. of Employment Sec.,* 331 Mass. 101 (1954), only by adopting an ad hoc approach in tune with the general principles outlined above. See *Goodridge* v. *Director of the Div. of Employment Sec.,* 375 Mass. 434, 436-437 (1978); *United Food Corp.* v. *Alcoholic Beverages Control Comm'n,* 375 Mass. 238, 244 (1978); *Dwyer* v. *Commissioner of Ins., supra* at 236; *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n,* 372 Mass. 152, 154 (1977); *Western Mass. Bus Lines* v. *Department of Pub. Utils.,* 363 Mass. 61, 63 (1973). In each case the court was either able to find independent corroboration or, in fact, made an independent evaluation of the reliability of the hearsay evidence, in essence the substitute for independent corroboration. Here the court apparently concludes that independent corroboration exists and that, on the basis of its own independent evaluation, the evidence is reliable.

I disagree with respect to both conclusions. First, the critical evidence of where Kozec became intoxicated is not corroborated except by additional hearsay which I would submit is less reliable than the hearsay of the transcript which was, at least, under oath and subject to some form of cross-examination, albeit not by a party with an interest in the case comparable to the plaintiffs'. Second, in its reliability analysis the court's reliance on *Richardson* v. *Perales,* 402 U.S. 389 (1971), is misplaced. The Federal court decisions make it clear that, under the Federal Administrative Procedure Act, courts will evaluate testimony or evidence for indicia of reliability on a case-by-case basis. Factors to be considered include independence or possible bias of the declarant, the type of hearsay materials submitted, whether statements are sworn to, whether statements are contradicted by direct testimony, availability of the declarant, and credibility of the declarant. *Calhoun* v. *Bailar,* 626 F.2d 145, 149 (9th Cir. 1980), cert. denied, 452 U.S. 906 (1981). In holding that the hearsay evidence (written med-

ical reports) relied upon in *Perales* could constitute substantial evidence, the Supreme Court stressed that "the specter of questionable credibility and veracity is not present; there is professional disagreement with the medical conclusions . . . but there is no attack here upon the doctor's credibility or veracity." *Perales, supra* at 407. Moreover, unlike the situation here, the Court noted that written medical evaluations were the sort of evidence traditionally relied upon in the agency's proceedings. *Id.* at 405-406. See also *Hoska* v. *United States Dept. of the Army,* 677 F.2d 131 (D.C. Cir. 1982) (in determining validity of revocation of public employee's security clearance and resulting dismissal from his civilian position, mere hearsay lacking sufficient assurance of its truthfulness was not substantial evidence to overcome sworn testimony of employee); *Johnson* v. *United States,* 628 F.2d 187 (D.C. Cir. 1980) (hearsay statements could be relied on where the three out-of-court declarants were disinterested witnesses, their accounts were consistent, and appellant's counsel had access to the statements before agency's hearing); *Duvall* v. *United States,* 647 F.2d 131 (Ct. Cl. 1981) (absence of credibility determination affects weight to be accorded hearsay evidence where there is dispute over its truthfulness).

*Duvall* underscores one of the key problems in this case. In assessing the reliability of Kozec's testimony one must consider her credibility. Yet neither the ABCC nor the licensing board of Salisbury was in any position to assess her credibility and, therefore, could, at best, make only an abstract determination of the inherent credibility of her testimony in light of the circumstances surrounding that testimony. Although a reviewing court is never in a position to assess credibility, where a reliability determination is affected by the credibility of a witness who has not testified before the agency, the reviewing court's independent assessment of reliability should at least discount the agency's credibility role. Therefore, to the extent that the court has relied on the traditional credibility assessment of a fact finder, here that reliance is misplaced.

The court further confuses the issue by essentially making dispositive the licensees' failure to subpoena Kozec for cross-

examination and ignores the key fact that Kozec was not subject to cross-examination at her criminal trial by the licensees. Compare *Eichberg* v. *Maryland Bd. of Pharmacy,* 50 Md. App. 189, 194 (1982) (testimony of witness at previous criminal trial was admissible in license revocation hearing where board's charges were essentially the same as those tried at criminal case and witness was subject to cross-examination by defendant/appellant). It is true that the *Perales* court pointed to the appellant's failure to make use of its subpoena power. There, however, the Court also noted that the burden was on the appellant to *establish* a right to a benefit. Here we are dealing with a license suspension which, as the licensees correctly argue, requires the ABCC to prove is warranted. Where the burden was on the agency to produce substantial evidence, the licensees' failure to subpoena Kozec does not somehow render unreliable hearsay now reliable. This court's holding in *United Food Corp.* v. *Alcoholic Beverages Control Comm'n, supra* at 243, that "[t]here was nothing wrong in receiving the BLB transcript supplemented as it was by other evidence, all open to challenge and contradiction by the appellant armed with a right of subpoena," is not contradictory. There, the issue was the procedural fairness of the ABCC's proceedings rather than the evidentiary support for its decision.[1]

I, therefore, conclude that uncorroborated hearsay testimony at a criminal trial on an issue not contested at the criminal trial where the witness has a motive to lie and was not subject to cross-examination by a person with the same or similar interests as the person against whom the evidence is being used is not sufficiently reliable to be given probative effect under G. L. c. 30A, § 11 (2), and, therefore, cannot constitute substantial evidence within the meaning of G. L. c. 30A, § 1 (6).

---

[1] Similarly, I would agree that the licensees' constitutional due process arguments should fail here as a result of their failure to subpoena Kozec. This issue is completely separate from the question whether there was substantial evidence.