Toomey, J.
JUDGMENT ON THE PLEADINGS
The plaintiff, City of Fitchburg, filed this complaint pursuant to G.L.c. 30A, §14 seeking judicial review of a decision by the Civil Service Commission (the “Commission”) reinstating Rolando Torres Pagan as an officer of the Fitchburg Police Department. On July 6, 1997, the City filed a Mass.R.Civ.P. 12(c) motion for judgment on the pleadings contending that the Commission’s decision to reinstate Pagan was not supported by substantial evidence. For the reasons stated infra, the decision of the Civil Service Commission is AFFIRMED.
BACKGROUND
Defendant Rolando Torres Pagan (“Pagan”) is a veteran police officer in the City of Fitchburg. In November 1993, Pagan was discharged by Fitchburg’s mayor acting in his capacity as the Appointing Authority (the “Appointing Authority”). The impetus for discharging Pagan was an alleged domestic disturbance in October 1993, involving Pagan and his wife, Jennifer Pagan (“Mrs. Pagan"). The allegations accused Pagan of forcing sexual relations upon Mrs. Pagan and threatening to kill her.
1. THE PRIOR INCIDENT
According to a letter issued by the Appointing Authority to Pagan, the contemplated discharge was warranted because Pagan’s conduct was unbecoming a police officer. The Appointing Authority cited as reasons, inter alia, for dismissal the histoiy of domestic abuse involving Pagan and his wife. More specifically, the Appointing Authority referred to an instance of domestic violence occurring on March 7, 1992, which resulted in the issuance of a criminal complaint against Pagan for assault with a dangerous weapon, to wit, a gun. Immediately after the issuance of the complaint, the Fitchburg Chief of Police (the “Chief’) suspended Pagan from the Fitchburg Police Department pending a further investigation and the outcome of criminal proceedings against Pagan. In August 1992, the Waltham District Court (Brant, J.) found facts sufficient against Pagan on the charges of assault with a dangerous weapon and continued the matter without a finding of guilty until February 1993. Pagan was placed on probation until the end of the continuance period. The Chief suspended Pagan for a period of five days after the finding of facts sufficient in August, 1992.
On August 18, 1992, Pagan received a letter suggesting that the Appointing Authority contemplated his termination. Pagan and the Appointing Authority then entered into a settlement agreement whereby Pagan admitted to the “substantial accuracy of the charges” arising form the March 7th incident. Among other terms of that settlement agreement, the proposed termination was reduced to a three month suspension and Pagan was required to undergo counselling before returning to duty. On December 10, 1992, Pagan received a “Fitness to Return to Dufy Evaluation” submitted by his psychologist, and he returned to active duty until the suspension and subsequent dismissal now under review.
2. THE PRESENT INCIDENT
On October 28, 1993, Pagan was suspended for five days by the Chief as a result of the October 27, 1993 incident. On October 29, 1993, Pagan received a letter of contemplated termination from the Appointing Authority. A hearing was held by the Appointing Authority on November 5, 1993, at which Pagan appealed the five day suspension and at which he presented evidence to the Appointing Authority concerning the contemplated termination. On November 9, 1993, Pagan was notified by the Appointing Authority that, as a result of matters determined at the November 5 hearing, he was terminated and discharged.
On February 7, 1994, Pagan appealed the termination and discharge to the Commission. The Commission, on April 5, 1995, returned a decision in Pagan’s favor, ruling that his dismissal was without just cause. Consequently, the Commission reversed Pagan’s discharge and ordered that he be returned to his position as Police Officer without loss of compensation. Fitch-burg now brings this complaint and motion seeking to undo the Commission’s reinstatement of Pagan.
DISCUSSION
1. THE PROCESS OF REVIEW
Superior Court Standing Order 1-96(4) provides that a motion for judgment on the pleadings is the proper method to resolve an action for judicial review *546 of an administrative decision. The effect of such a motion, brought pursuant to Mass.R.Civ.P. 12(c), is to challenge the legal sufficiency of the complaint. Wilson v. Commonwealth, 31 Mass.App.Ct. 757, 763, aff'd, 413 Mass. 352 (1992). In ruling on the motion, the court must determine whether, “taking all of the plaintiffs factual allegation as true, they are legally sufficient to make out a claim.” Id.
In determining whether the allegations are legally sufficient, a court ruling on a complaint for judicial review under G.L.c. 30A is confined to the record of the administrative hearing unless procedural irregularities are alleged. G.L.c. 30A, §14(5); LeMaine v. City of Boston, 27 Mass.App.Ct. 1173, 1174 (1989). Fitchburg does not allege any procedural irregularity at bar and, therefore, this court will limit its review to matters contained in the record of the Commission.
The parly appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab., 27 Mass.App.Ct. 470, 474 (1989). In reviewing the agency decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. G.L.c. 30A, §14(7); Iodice v. Architectural Access Bd., 424 Mass. 370, 375-76 (1997). “This standard of review is highly deferential to the agency on questions of fact and reasonable inferences drawn therefrom.” Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992). This court will employ that perspective in its assessment of Fitchburg’s claim that the Commission erred in reinstating Pagan.
2. THE QUESTION OF SUBSTANTIAL EVIDENCE
We begin with the proposition that, “[The] substantial evidence test is commonly understood to require that agency findings must rest upon such evidence as a reasonable mind might accept as adequate to support a conclusion; review under the standard entails scrutiny of the whole record to determine whether substantial evidence exists.” Boston Edison Co. v. Boston Redevelopment Auth., 374 Mass. 37, 54 (1977). That review focuses upon the question of whether there is substantial evidence to support the decision, and, accordingly, the court does not make credibility evaluations or engage in an assessment of the weight to be accorded to the evidence. Hickey v. Commissioner of Pub. Welfare, 38 Mass.App.Ct. 259, 262 (1995); see also Boston Edison Co., supra, 374 Mass. at 76 (Quirico, J., concurring).
Fitchburg contends that the Commission improperly relied on an affidavit submitted by Mrs. Pagan on December 9, 1993, in which she recanted all the allegations she had made against Pagan on October 27, 1993. Fitchburg argues that the affidavit was hearsay and that its recantation was unworthy of belief. Continuing, Fitchburg submits that without Mrs. Pagan’s recantation affidavit, the Commission lacked substantial evidence to support its decision. Fitchburg’s argument, in the view of this court, comes up short.
In support of its contention that the affidavit was improperly considered by the Commission, Fitchburg relies upon Embers of Salisbury v. Alcohol Bev. Control Comm’n, 401 Mass. 526 (1988). In pertinent part, that case held that an administrative agency can give probative value to evidence which is exclusively hearsay only if the evidence carries with it an indicia of reliability, particularly where the out of court declar-ant was “unavailable” and not subject to cross examination. Id. at 530. But, Embers is of no help to Fitchburg because its disqualifying consideration— unreliability — is not established at bar.
Fitchburg argues that Mrs. Pagan’s recantation affidavit is not reliable evidence and that, therefore, Embers suggests that the affidavit ought not to have been included in the Commission’s calculus. Fitchburg’s position is based on Mrs. Pagan’s inconsistent and erratic behavior, including drug use, a suicide attempt, and an instance of discharging a firearm from her home’s window sometime between February 1993 and December 1993. Fitchburg also suggests that Mrs. Pagan had ulterior motives rooted in financial incentive as her reason for recanting the allegations made against Pagan. Those considerations are, however, pertinent to credibility and their impact is to be determined exclusively by the agency. The Commission having found the affidavit credible and reliable despite those considerations, then that ends the debate, for this court is not permitted to substitute its credibility determination for that of the agency. Retirement Bd. of Brookline v. Contributory Retirement Appeal Bd., 33 Mass.App.Ct. 478, 480, rev. denied, 414 Mass. 1101 (1992). Because the recantation affidavit is thus painted with the pigment of reliability, Embers does not operate to bar its consideration by the Commission.
Moreover, even assuming arguendo the unreliability of Mrs. Pagan’s recantation affidavit and hypothesizing its exclusion from consideration, the decision of the Commission remains rooted in substantial evidence. In its conclusions of law, the Commission found the original “allegations against Pagan to be questionable even without reference to the subsequent affidavit recanting those charges.” The Commission concluded that it could not discount the possibility that Mrs. Pagan’s pre-recantation accusations against her husband had been the product of emotional instability and/or substance abuse, the same considerations, by the way, that Fitchburg relied upon in contending that the recantation was unreliable.[2]
The Commission found persuasive the evidence that Mrs. Pagan was an alcohol and drug abuser and was emotionally unstable at or around October 27, 1993. (Hearing Decision p.2.) The Commission saw *547 significance, for credibility purposes, in Mrs. Pagan’s involuntary commitment to a psychiatric hospital in the summer of 1993. Id. Relying on those facts, the Commission refused to conclude that Mrs. Pagan’s initial allegations as to her husband’s misconduct were credible or were sufficiently corroborated by Officer Bourgeois’s observations to resuscitate the allegations.[3] In the view of the Commission, therefore, her allegations, even without the eroding effect of her recantation, did not provide an adequate basis for termination.
The most damaging material in the record, according to the Commission, consisted of the prior incident in March 1992 when Pagan pointed a gun at his wife. The Commission determined that that matter had been addressed by the three month suspension of Pagan in 1992 and that “the incident is irrelevant to the [instant] question of whether there is just cause to conclude that [Pagan] had nonconsensual sexual relations with his wife and threatened to kill her on October 27, 1993.” The Commission concluded that it could consider Pagan’s disciplinary history only if the instant claims were proved beyond a fair preponderance of the evidence. City of Gloucester v. Civil Service Comm'n, 408 Mass. 292, 297 (1990). Because, in the Commission’s view, the instant claims were not proved, Pagan’s less than admirable past would not work against him in the present matter. Given the narrow scope of its review, this court cannot quarrel with the Commission’s election not to consider Pagan’s history.
CONCLUSION
The decision of the Commission reinstating Pagan to the Fitchburg police department is consistent with the evidence submitted at the hearing and the statutory discretion conferred upon the Commission to determine the effect of the evidence. This court must, by law, defer to the Commission’s finding that Fitch-burg failed to prove its allegations by a fair preponderance of the evidence. See, City of Gloucester v. Civil Service Comm’n, 408 Mass. 292, 297 (1990) (a discussion of the standard of proof necessary to sustain the termination of a Civil Service employee).
This court may only interfere with the decision of the Commission if the result is not based upon substantial evidence. In reviewing the Commission’s decision, the court is not permitted to make de novo determinations of fact, to make different credibility choices or to draw different inferences from facts found by the Commission. Even if the court, hearing the matter de novo, had been inclined to a different conclusion the court cannot elevate its assessment of the evidence over that of the Commission. This court will not tolerate domestic abuse in any setting, and especially not where the abuser is a law enforcement officer, but the court is not empowered to indulge its view of the evidence in circumstances in which the law recognizes the superiority of the contrary view.
Based upon the record of the Commission hearing and the evidence submitted therein, the court determines that Fitchburg has not borne its burden of demonstrating that the Commission’s decision is unsupported by substantial evidence. See, Merisme v. Board of Appeals on Motor Vehicle Liab., 27 Mass.App.Ct. 470, 474 (1989). (a discussion of the burden placed on the moving party of a G.L.c. 30A action).
ORDER
It is hereby ORDERED that the City of Fitchburg’s motion for judgment on the pleadings is DENIED and judgment shall enter for the defendants AFFIRMING the decision rendered by the Civil Service Commission on April 5, 1995.

 Surely, if Mrs. Pagan’s circumstances rendered her recantation suspect, as Fitchburg maintains, those same circumstances would, in logic, discredit her original accusation as the Commission found.

 Daniel Bourgeois is a Sergeant in the Lunenburg Police Department. Sgt. Bourgeois offered the following testimony at the Commission hearing.
On October 27, 1993 Sgt. Bourgeois went to Pagan’s residence to investigate a domestic problem. When he arrived at the residence he observed Mrs. Pagan in the driveway trembling, crying and appearing to be afraid. According to Bourgeois’s testimony, she did not appear to be under the influence of drugs. Mrs. Pagan told Bourgeois that she had called her husband at his girlfriend’s home and told him if he did not come home, she was going to call the police. Mrs. Pagan told Sgt. Bourgeois that Pagan said he would “bury” Mrs. Pagan if she got a restraining order.
When Pagan arrived at his residence, Bourgeois placed him under arrest. According to Bourgeois’s testimony, Pagan was calm, cooperative and polite during the arrest procedures.
The Bourgeois “corroboration" did not compel the Commission to credit Mrs. Pagan’s initial accusation and does not compel this court to rescue that initial accusation from the debilitating effects of the Commission’s refusal to credit it.