Muse, J.
Plaintiff Powers Package Store (“plaintiff’ or “Powers") brings this action pursuant to G.L.c. 30A, §14, challenging the decision of the Natick Board of Selectman (“NBS”) and Alcoholic Beverages Control Commission (“ABCC”) to suspend plaintiffs’ liquor license as a result of two incidents occurring on September 11 and September 12, 2001. For the reasons *320 set forth below, the plaintiffs Motion for Judgment on the Pleadings is ALLOWED and the case is remanded to the ABCC for further proceedings consistent with this decision.
BACKGROUND
September 11, 2001
On September 11, 2001, at approximately 8:50 p.m., the Natick Police Department received a call indicating that a white male was threatening individuals.[3] Officer Alan Graham (“Graham”) was on patrol and observed a man matching the description in the immediate vicinity of Powers. The male, identified as William Edgerly (“Edgerly”), was allegedly found to have a six-pack of beer in his possession and was exhibiting clear signs of intoxication. As a result, Edgerly was taken into protective custody and a breathalyzer test indicated that his blood alcohol content (“BAC") was .21.
September 12, 2001
Sometime during the day, Edgerly entered Powers and purchased alcohol.[4] During the late afternoon of September 12, 2001, Graham responded to a disturbance call at the Natick MBTA commuter platform. Upon arrival, Graham found Edgerly, who was holding a can of beer, engaged in an altercation with another individual. Graham descended to the platform and arrested Edgerly. At the time of arrest, Edgerly was emitting a strong odor of alcohol and had in his possession four unopened cans of beer, in addition to the half-full can of beer he was previously seen holding.[5] Edgerly stated he had purchased the alcohol at Powers from the owner, MaryAnn Powers (“MaryAnn”). Graham gave Edgerly a breathalyzer and determined his BAC to be .20.
Graham’s Investigation
Following the incident on September 12, Graham returned to Powers to inquire about the two sales of alcohol to Edgerly. MaryAnn admitted to selling alcohol to Edgerly on September 12 and stated at the time of the sale, she had both observed his actions and had a short conversation with him and did not observe any signs of intoxication.[6]
While questioning MaryAnn, Graham informed her that Edgerly was found intoxicated outside Powers the evening before with a six-pack of beer, and asked for the names of the employees working on September 11, 2001. MaryAnn gave Graham the names of the two employees who were working, Roger Montaldo (“Montaldo”) and Daniel O’Callahan (“O’Callahan”). Graham asked for Maltaldo’s phone number and stated he had access to O’Callahan’s number. Thereafter, Graham called Montaldo, who allegedly admitted to selling alcohol to Edgerly on September 11, 2001.[7]
Natick Board of Selectmen Hearing
On October 23, 2001, Powers received notice from the NBS that a hearing was scheduled regarding two allegations that Powers served alcohol to an intoxicated patron during the time period of September 11 through September 12, 2001. This hearing came as a result of Graham’s investigation, which included his report of the events on September 12, 2001, and an unsworn statement from Montaldo contained within his police report. On December 17, 2001, Powers appeared before the NBS and its members.
On January 15, 2002, the NBS issued a decision finding sufficient evidence as to the allegations and ordered that Powers’ liquor license be suspended for a period of five days. Powers exercised its right of appeal from the NBS’s decision to the ABCC. On May 29, 2002, a hearing de novo was held at the ABCC. On June 11, 2002, the AIBCC issued its decision upholding the NBS’s decision.
DISCUSSION
I. Standard of Review
Massachusetts General Laws chapter 30A, §14(7) provides, in pertinent part:
The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is
(a) In violation of constitutional provisions; or
(b) In excess of the statutory authority or jurisdiction of the agency; or
(c) Based upon an error of law; or
(d) Made upon unlawful procedure; or
(e) Unsupported by substantial evidence; or
(f) Unwarranted by facts found by the court on the record as submitted or as amplified under paragraph (6) of this section, in those instances where the court is constitutionally required to make independent findings of fact; or
(g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law.
It is the plaintiffs burden, as the moving party, to establish that the agency’s decision was invalid. Bagely v. Contributory Retirement Appeal Bd., 397 Mass. 255, 258 (1986).
In this case, the plaintiff claims the agency’s decision was based on an error of law, unsupported by substantial evidence, unwarranted by facts found by the court, and arbitrary or capricious. Pursuant to G.L. 30A, §14, the reviewing court shall examine the record of proceedings from the agency decision(s) and determine whether, based upon the record and considering the “experience, technical competence and specialized knowledge of the agency,” the agency decision was appropriate. See G.L.c. 30A, §14 (5-7); Flint v. Commissioner of Public Welfare, 412 Mass. 416, 421 (1992).
*321 In its review, the court must determine whether the agency decision was supported by substantial evidence.[8] Embers of Salisbury, Inc. v. Alcoholic Beverages Control Commission, 401 Mass. 526, 528 (1988). “Substantial evidence” has been defined as “such evidence as a reasonable mind might accept as adequate to support a conclusion.” Id. at 529. Under the substantial evidence test, “the court is not authorized to make de novo determinations of the facts, to make different credibility choices, or to draw different inferences from the facts found by the [agency].” Doherty v. Retirement Board of Medford, 425 Mass. 130, 141 (1997). Simply stated, the reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational School District v. Labor Relations Committee, 386 Mass. 414, 420-21 (1982), citing Olde Town Liquor Store, Inc. v. Alcoholic Beverages Control Commission, 372 Mass. 152, 154 (1977).
The court is not required to affirm the agency merely on a finding that the record contains evidence from which a rational mind might draw the desired inference but rather, the court is to probe whether the evidence points to an appreciable probability of the conclusion arrived at by the commission. New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 486 (1981). In consideration of the scope of review imposed by §14, this Court finds there was not substantial evidence to support the NBS or ABCC’s decision that Powers twice violated G.L.c. 138, §69 in selling alcohol to an intoxicated person(s).
II. September 11, 2001 Events
The first violation stems from an incident occurring on September 11, 2001. On this date, Graham, investigating a complaint, allegedly came upon Edgerly as he was exiting Powers in an intoxicated condition. According to the record, to which there has been no contradiction, the sole basis for the violation is founded upon Montaldo’s unsworn statement that he had sold alcohol to Edgerly just before closing.[9] During the hearing, Graham testified from his police report about the incident and Montaldo’s statement that he had sold Edgerly alcohol. Such evidence is uncorroborated hearsay.
This Court may not disturb the ABCC’s findings unless a review of the record as a whole fails to disclose substantial evidence to support it. However, “(i]f the pertinent evidence is exclusively hearsay, that does not constitute ‘substantial evidence’ even before an administrative tribunal.” Sinclair v. Director of the Div. of Employment Sec., 331 Mass. 101, 103 (1954). “(W]hen unsworn hearsay constitutes the major support for the administrative decision, the importance of providing the adversary with the opportunity to test on cross-examination each of the available declarants’ perception, memory, narration, and veracity is undeniable.” Ruguero v. Teacher Standards and Practices Comm’n, 822 P.2d 1171, 1182 (1991), as quoted in Kates v. Board of Educ., 4 Mass. L. Rptr. 112, 1995 WL 433254 (Mass.Super. 1995) (emphasis added). The Ruguero court further held that, “[e]ven where hearsay is sufficiently reliable ... that same hearsay might not be relied on when the consequences of the decision would be a profound impact on, for example, the ability of an individual to pursue a chosen profession.” Id. at 1183.
The crucial point is not whether the only evidence relied upon was inadmissible hearsay in a court of law, but whether the hearsay carried with it certain “indicia of reliability and probative value.” Embers, 401 Mass. at 530. The evidence in Embers involved a transcript of a related criminal trial, given in open court, under oath, and subject to cross-examination. Id. Under those circumstances, the court held that it was not error for the agency to consider the transcript. Unlike in Embers, the statement in this case was not made under oath, nor was it subject to cross-examination. This Court therefore finds that the statement contained in the police report in no way rises to anything approaching the same level of reliability and trustworthiness found in Embers.
As previous case law makes clear, uncorroborated hearsay or rumor does not constitute substantial evidence in support of an agency decision. Consolidated Edison Co. v. National Labor Relations Bd., 59 S.Ct 206, 217 (1938); Merisme v. Board of Appeals on Motor Vehicle Liab. Policies and Bonds, 27 Mass.App.Ct. 470, 475 (1989); Moran v. School Committee of Littleton, 317 Mass. 591, 596-97 (1945). Here, there is no indication in the record that Montaldo was unavailable to testify at the hearing. Although it is true that Powers could have called Montaldo to testify, the burden of proving that Powers sold alcohol to an intoxicated person remained with the NBS and ABCC. Both the NBS and ABCC were charged with presenting substantial evidence to support its allegations. Therefore, this Court concludes that the ABCC’s offering of and reliance upon Montaldo’s unsworn statement to satisfy the “substantial evidence” standard fails.
III. September 12, 2001 Events
The second violation is based solely upon Graham’s suspicion that Edgerly was intoxicated at the time of the purchase because of the breathalyzer exam. However, “suspicions are an insufficient basis for licensing sanctions.” Griffin’s Brant Rock Package Store v. Alcoholic Beverages Control Commission, 12 Mass.App.Ct. 768, 773 (1981), citing Wilkenfeld v. Meiklejohn, 216 So.2d 237, 239 (Fla.Dist.Ct.App. 1968). Where the subject matter requires special knowledge beyond that possessed by average individuals, an expert opinion may be necessary to assist these individuals in their decision making. Cronin v. McCarthy, 22 Mass.App.Ct. 448, 449 (1986).
Graham’s testimony was of a complex nature, requiring training in reverse extrapolation, and could not be assumed to be within the ordinary experience *322 or knowledge of the NBS or ABCC.[10] It is this Court’s opinion that an expert was necessary to support the September 12, 2001 violation. Graham is not a toxicologist and offered no evidence that he had been trained in reverse extrapolation of BAC. Therefore, this Court finds that Graham’s testimony does not reach the level of reliability or probative value to justify reliance upon it as substantial evidence.
IV. Findings Common to Both Counts
“Evidence of later intoxication has been admitted for purposes of bolstering other evidence concerning a patron’s condition at the time alcohol was served, but it is not sufficient by itself to establish apparent intoxication at the time alcohol was served.” Douillard v. LMR, Inc., 433 Mass. 162, 165-66 (2001). Moreover, courts are “reluctant to accept evidence of subsequent, obvious intoxication as a surrogate for evidence of a patron’s demeanor at the relevant time.” Vickowski v. Polish American Citizens Club of Town of Deerfield, Inc., 422 Mass. 606, 612 (1996). The reluctance to accept this type of evidence “stems from the uncertainties of the situation, including the possible delayed impact of the consumption of alcohol, and the unknown effect on a patron of the last drink served to him by a licensee.” Id.
It was the NBS and ABCC’s duty to show that Powers was on notice that Edgerly was already showing discernable signs of intoxication. In the present case, no evidence was offered to prove Edgerly’s intoxication at the time of purchase other than pure conjecture or surmise. Given these circumstances and the evidence presented, this Court finds the agency could not draw an inference of obvious intoxication at the time of sale with the requisite degree of certainly.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs motion for judgment on the pleadings is ALLOWED, and the defendant’s cross-motion for judgment on the pleadings is DENIED. Therefore, the five-day suspension of the plaintiffs license is vacated, and the case is remanded to the Alcoholic Beverage Control Commission for further proceedings consistent with this decision.

For purposes of the court’s consideration of the [rule 12(c)] motion, all of the well pleaded factual allegations in the adversary’s pleadings are assumed to be true and all contravening assertions in the movant’s pleadings are taken to be false. 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure §1368, at 691 (1969); Minaya v. Massachusetts Credit Union Share Ins. Corp., 392 Mass. 904, 905 (1984).

According to the plaintiff, Edgerly purchased a six-pack of beer and a half-pint of vodka.

The half-pint of vodka and a can of beer were missing.

Frank Whelan, another employee on September 12, 2001, also had an opportunity to speak and observe Edgerly, and also did not observe any signs of intoxication.

It is uncontested that Graham did not contact O’Connell. According to O’Connell, Edgerly attempted to enter the store on September 11, 2001 after it had closed for the evening and was turned away never having purchased alcohol from Powers. In addition, Montaldo was terminated from his position at Powers within days of September 12, 2001, as he had been suspected of stealing from the store.

The Court is deciding this motion on the basis of plaintiffs “substantial evidence” claim. Therefore, it declines to address plaintiffs other claims.

According to Graham’s own testimony, there was no receipt evidencing the sale of alcohol, he did not ask Edgerly where he purchased the alcohol, did not determine whether the beer was warm or cold, nor did he inquire of Edgerly whether the alcohol had been purchased that night.

Reverse extrapolation is a method used to calculate, in reverse, an individual’s state of intoxication at a point in time prior to a breathalyzer test.