SPECTOR, Judge.
Petitioner seeks review of an order of the State Beverage Department and the Department of Business Regulation denying his application for transfer of a liquor license in Jacksonville, Florida.
The order denying the transfer was based on a finding that petitioner was not qualified to hold such a license by reason of Section 561.15(1), Florida Statutes, F.S.A., which provides that licenses shall be issued only to persons of good moral character. A hearing was held pursuant to Section 561.19(2), Florida Statutes, F.S.A., upon petitioner’s request and testimony was presented by both sides touching on the question of petitioner’s moral character. The order of denial followed.
The sole question presented for our consideration is whether there was substantial competent evidence to support the conclusion that petitioner was not of good moral character so as to justify the denial of the transfer.
In support of its order, the department introduced testimony of several law enforcement officers who knew the petitioner. The first witness, Mr. Jernigan, who had known the petitioner for nearly ten years, testified that he had never arrested the petitioner nor observed him committing any criminal offense. The only derogatory evidence that Mr. Jernigan was able to give was that he was in the city police station one night in 1968 when petitioner had been arrested for possession of lottery, which resulted in a municipal fine of $100.00. The next, witness, Mr. Pfeiffer of the sheriff’s office, was able to testify of his own knowledge only that he had never seen petitioner commit a criminal offense nor had he ever had occasion to arrest petitioner. The next witness was a lady who operated a grocery store. She admitted that she sold lottery tickets for several months during which time • she stated that petitioner picked up money two or three times which came from that activity. However, she was unable to state that petitioner knew or said anything indicating that he knew this was lottery money or that she, the witness, was engaged in the lottery business so as to be aware that this was tainted money. The hearing examiner found that no charges were made against petitioner directly arising from this involvement. Several other witnesses were produced by the department, but the sum of their testimony was that petitioner had been convicted of possession of lottery tickets and was suspected of being connected with gambling. The only affirmative evidence adduced of wrongdoing all related to petitioner’s convictions in municipal court of possession of lottery tickets which some of the witnesses on cross examination conceded might be evidence of numbers betting by petitioner as distinguished from the taking of bets or operating lottery.
There was considerable testimony that petitioner was suspected of being on the operational end of the numbers business. However, nowhere in the record is there any evidence to support such a conclusion. Even the several instances of surveillance testified to by the officers failed to turn up any evidence that petitioner was more than a suspect. The reliance upon such evidence as the basis of a denial of a license transfer was rejected by this court in Wilkenfeld v. Meiklejohn, 216 So.2d 237, wherein we held that suspicion of violations could not form the basis of licensing sanctions.
*868 The respondent’s order of denial appears to rest principally upon the showing that petitioner did not meet the good moral character requirement of the statute because of his convictions of possession of lottery tickets. We think the respondent’s reliance upon such convictions was misplaced.
In Everett v. Mann, 113 So.2d 758 (Fla.App.1959), a registrant appealed the denial of his motion to quash an information for suspension of his registration instituted before the Real Estate Commission. He was charged with having been guilty of a crime against the laws of Florida involving moral turpitude, the information setting out the crime as “possession of lottery tickets evincing an interest in a lottery scheme commonly known as ‘Cuba or Bolita.’ ” The appellate court held that this misdemeanor offense did not involve moral turpitude, the court noting that’ “moral turpitude” must exist entirely apart from the fact that some statute has been violated. Moral turpitude was found to involve an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowman. This would seem to clearly indicate that any offense which is not malum in se would not necessarily involve moral turpitude. The court in Everett also noted that they were not involved with a conviction of conducting a lottery or other allied phases of operating one.
More recently, the court in Carp v. Florida Real Estate Commission, 211 So.2d 240 (Fla.App.1968), held that a conviction of bookmaking was sufficient to support a broker’s license revocation because such conduct did constitute a crime involving moral turpitude. In Carp, the court rejected a contention that the revocation was void under the authority of Everett v. Mann, supra, because the latter case involved only the possession of lottery tickets as distinguished from bookmaking. We think the distinction between bookmaking and betting is as significant as the distinction between making moonshine whiskey and drinking it. We would not be inclined to hold that a man’s character is necessarily tainted because he occasionally treated himself to a taste of homemade spirits.
At the hearing, petitioner produced a number of character witnesses, including1 a practicing dentist and two attorneys, one of whom is a city commissioner and a civic leader in petitioner’s immediate community. Each of the witnesses is a respected member of the Jacksonville community and all testified as to their long acquaintance with petitioner and their high regard for his moral character. Such evidence, while not binding on the respondent, is entitled to serious consideration in a case where there has been no showing that an applicant for a license transfer has been found guilty of conduct involving moral turpitude.
We hold that the writ of certiorari should issue and the order denying petitioner’s application for transfer be quashed with directions that the application for transfer be granted.
CARROLL, DONALD K., Acting C. J., and WIGGINTON, J., concur.