768                      12 Mass. App. Ct. 768

Griffin's Brant Rock Package Store, Inc. *v.* Alcoholic Beverages Control Commission.

GRIFFIN'S BRANT ROCK PACKAGE STORE, INC. *vs.* ALCOHOLIC
BEVERAGES CONTROL COMMISSION.

Plymouth. October 13, 1981. — December 14, 1981.

Present: GREANEY, CUTTER, & KASS, JJ.

*Alcoholic Liquors*, Transfer of license, Loans between licensees, Revocation of license. *Administrative Law*, Substantial evidence.

Evidence in a proceeding before the Alcoholic Beverages Control Commission did not warrant the commission's conclusion that a liquor license had been transferred in violation of G. L. c. 138, § 23, although there was evidence of a high level of cooperation between the licensee and other interests. [770-774]

The Alcoholic Beverages Control Commission does not have authority to revoke a liquor license for a violation of G. L. c. 138, § 25, which prohibits a licensee from borrowing money from another licensee. [774]

CIVIL ACTION commenced in the Superior Court on January 13, 1977.

The case was heard by *Travers*, J., on motion for summary judgment.

*Evan T. Lawson* for the plaintiff.

*Francis X. Bellotti*, Attorney General, *Gerald J. Caruso*, Assistant Attorney General, for the defendant, submitted a brief.

KASS, J. After a hearing, the Alcoholic Beverages Control Commission (commission) determined that Griffin's Brant Rock Package Store, Inc. (Griffin), had transferred its licenses[1] without consent of the commission, in violation of

---

[1] Griffin was the holder of an annual wines and malt beverages package store (i.e., not to be consumed on the premises) license (see G. L. c. 138, § 15), and a seasonal license to sell all alcoholic beverages (see G. L. c. 138, § 17).

G. L. c. 138, § 23,[2] and that Griffin had borrowed money from another licensee under G. L. c. 138, in violation of G. L. c. 138, § 25.[3] For these transgressions the commission revoked Griffin's licenses.[4]

Proceedings under G. L. c. 30A, § 14, followed, and a Superior Court judge, acting on a motion for summary judgment (see Mass.R.Civ.P. 56, 365 Mass. 824 [1974]), entered judgment for the commission. Two issues are central to the case: (1) Was there substantial evidence on the record which warranted the commission in concluding that Griffin had transferred its license? (2) May the commission revoke a license for a violation of G. L. c. 138, § 25?

Between them, Rita Jenkins and C. Wade Jenkins (the owners) owned all the capital stock of Griffin. Before they acquired the license for the Griffin store in 1975, the owners had acquired the building in Marshfield in which the store was located. Almost at once the owners experienced difficulty with operating the store and ran up delinquent accounts payable with suppliers. It is a serious thing in the alcoholic beverages business not to be liquid. Under the third paragraph of G. L. c. 138, § 25, no licensee (e.g. a wholesaler) shall sell to a licensee on the delinquent list except for cash.[5] Griffin, however, contrived to pay its debts

---

[2] The first sentence of the ninth paragraph of G. L. c. 138, § 23, as appearing in St. 1943, c. 542, § 12, provides: "Any license under this chapter . . . may be transferred to any individual, partnership or corporation qualified to receive such a license in the first instance, if, in the opinion of the licensing authorities, such transfer is in the public interest."

[3] General Laws c. 138, § 25, as appearing in St. 1968, c. 574, § 1, so far as material, provides: "It shall be unlawful for any licensee under this chapter to lend or borrow money, directly or indirectly, to or from any other licensee under this chapter." Section 25 also proscribes the extension of credit between licensees other than in the usual course of business and, even then, the extension may not exceed sixty days.

[4] The commission's decision found violations of § 23 and § 25, but did not impose separate penalties. It ordered revocation as a single penalty for the two offenses.

[5] Their travail with the liquor business was not atypical of the owners' experience in other enterprises. In testimony before the commission, Rita Jenkins described herself and her husband as a couple of retired school

and restore itself to the good graces of its vendors with speed so dramatic that its sudden return to economic health came to the attention of the commission. An investigation ensued.

1. *Was there substantial evidence of a license transfer?* Substantial evidence is more than just some evidence to support the conclusion of the administrative agency. *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 253 (1966). Under G. L. c. 30A, § 14(7), as appearing in St. 1973, c. 1114, § 3, a reviewing court acts "upon consideration of the entire record" and must take into account whatever in the record fairly detracts from its weight. 350 Mass. at 253. *Arthurs* v. *Board of Registration in Medicine*, 383 Mass. 299, 304 (1981). Thus, "we are not required to affirm the [agency] merely on a finding that the record contains evidence from which a rational mind might draw the desired inference." *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981). Rather, we are to probe whether the evidence points to an appreciable probability of the conclusion arrived at by the commission. *Id.* The first of those conclusions is that the owners caused Griffin to transfer its license.

Among the subsidiary facts found by the commission (the substántiality of the evidence in the record underlying the subsidiary findings is not contested by Griffin) were the following: Rita Jenkins authorized John and Vincent Turner, brothers, to sign checks on a bank account which Griffin maintained at the Rockland Trust Company, but that authority was withdrawn three months later. The Turner brothers, between them, were the principals in several package stores which operated under the name "Thrifty Liquors."[6] One Fred Azar left his job as an assistant to Vincent Turner to manage Griffin for the owners. The Turners

---

teachers. She said, "I have an awful lot of business, we have a restaurant, we have a laundry, we have a candy store, we have an ice cream shop, we have apartments, and we don't know how to run them, that's the trouble."

[6] There was, for example, a Neponset Thrifty, a Brockton Thrifty, a Medford Thrifty and a Cambridge Thrifty. A Mattapan Thrifty was not owned by a Turner, but the store was a link in the chain.

and their business associates became actively involved with the restoration of Griffin's standing with its suppliers. Vincent Turner purchased a treasurer's check to discharge a debt of Griffin's. The manager of Brockton Thrifty made cash payments on behalf of Griffin to remove it from the delinquent list. Azar gave John Turner $3,236 in cash to pay amounts Griffin owed to wholesalers. The owner of Mattapan Thrifty, William Walsh, arranged for advertisements by Griffin in the South Shore News and the Marshfield Mariner. Walsh's name appears on at least nine invoices for delivery of inventory to Griffin. Rita Jenkins appears not to have known Walsh. Griffin failed to produce receipts from wholesalers for payments made to discharge its indebtedness. Had the commission wished so to do, it could also have found that the operating authority over Griffin's store was in Azar; Federal Distillers, a supplier, treated Griffin as a Thrifty store in matters of credit; and the signatures of Walsh and one Kelly (not an employee of Griffin), as well as Azar's, appeared on receiving invoices of deliveries to Griffin.

While the facts recited reflect a high level of cooperation between Griffin and the Turner interests, it is less clear that those facts lead to the conclusion that Griffin made a transfer of its license. No particular expertise of the commission bears on the analysis of what constitutes a transfer of a license. Compare *Selectmen of Marion* v. *Labor Relations Commn.*, 7 Mass. App. Ct. 360, 362 (1979).

It takes more than the involvement of others to effect a transfer of a business interest. Implicit is a surrender of control. *American Dock Co.* v. *City of New York*, 174 Misc. 813, 822 (Sup. Ct. 1940), aff'd 286 N.Y. 658 (1941). *California Sch. Employees Assn.* v. *Sunnyvale Elementary Sch. Dist.*, 36 Cal. App. 3d 46, 57 (1974). So, for example, a transfer of a license occurs when there is a sale of a liquor business and the license is inseparable from the purchase price. *Kennedy* v. *Welch*, 196 Mass. 592, 595 (1907). A transfer of a business takes place when the person introduced to it runs the business for his own account. See *Wood-*

*ward* v. *Pro Del Corp.*, 64 Ill. App. 3d 684, 686 (1978) (effort to transfer business using a liquor license conceded, but transfer failed because in violation of Illinois Dramshop Act). Entrusting management responsibilities to others, as the owners did with Azar, has not been regarded as a license transfer. *Hanley* v. *Gowan*, 202 Mich. 293, 296-297 (1918). *Berarducci Liquor License Case*, 195 Pa. Super. Ct. 524, 526-527 (1961). *Damalson Grocery, Inc.* v. *State Liquor Authy.*, 46 App. Div. 2d 809, 811 (N.Y. 1974).

Indeed, the supervising investigator for the commission, Walter J. Deveau, when he testified before the commission, said no more than, "We are hoping to prove that prior to March 1, 1976, and subsequent to March 1, 1976, other interests became involved in Griffin's Brant Rock Package Store and it is our contention that, although the statute does not require it, the local licensing authority should have been informed of these changes." Involvement of other interests falls short of a license transfer.

The distinction is one which G. L. c. 138 seems to take into account. Thus, §§ 12 and 15 restrict the grant of other licenses under c. 138 to "a person, firm, corporation, association or other combination of persons, directly or indirectly or through any agent, employee, stockholder or other person or any subsidiary." G. L. c. 138, § 15, as appearing in St. 1935, c. 440, § 12. Section 15A, dealing with applications for original licenses, is concerned with who has a beneficial interest, directly or indirectly, in the prospective licensee and forbids transfer, pledge, or issue of stock in a corporate licensee without permission of the local licensing authorities and the commission. Section 23 makes no such reference to shift to beneficial interest. A change of beneficial interest, therefore, is apparently a violation of § 15A, and the failure to disclose such a change is an apt subject for action in connection with license renewals under § 16A. Section 25, for its part, deals with different levels of interest, i.e., those resulting from extension of credit.

No evidence appears in the record that Azar or either of the Turners, or an entity controlled by either Turner, holds

12 Mass. App. Ct. 768 773

Griffin's Brant Rock Package Store, Inc. v. Alcoholic Beverages Control Commission.

stock of Griffin or a pledge of its stock. There is no evidence that anyone other than the owners is entitled to profits. So far as appears, Azar received nothing more than a weekly salary, and the Turners received no income from Griffin. The newspaper advertisement placed by Walsh in the South Shore News was paid for with a check on Griffin's bank account. A substantial portion of the funds required to pay Griffin's vendors was supplied by Griffin and the owners. So far as appears, the business of Griffin was run for the account of no one other than the owners. While the record justifies the commission in having prudent suspicions of more than friendly interests by others, suspicions are an insufficient basis for licensing sanctions. *Wilkenfeld* v. *Meiklejohn*, 216 So.2d 237, 239 (Fla. Dist. Ct. App. 1968). *Jenkins* v. *Beary*, 241 So.2d 866, 867 (Fla. Dist. Ct. App. 1970). The activity of the Turners, for example, could be viewed as consistent with the efforts of persons working out a troubled business situation in expectation of financial rewards short of ownership of the enterprise.

It is a substantial difficulty with the commission's case that it does not say to whom Griffin has transferred its license. Was it John Turner, Vincent Turner, or one of the Thrifty entities? In this regard the facts are different from those in *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 346-350 (1964), and *Number Three Lounge, Inc.* v. *Alcoholic Beverages Control Commn.*, 7 Mass. App. Ct. 301, 304-308 (1979). In *Cleary*, the purported principal contributed no financial resources and was wholly dependent on his father and corporations controlled by his father. The father and his corporations were disqualified from applying for the license which was the subject of that litigation.[7] In *Number Three Lounge*, there was evidence that a son-in-law of a person who had been refused a license was substituted as an

---

[7] As it then appeared, G. L. c. 138, § 12, forbade the holder of a license issued under § 12 (for on premise consumption, e.g., a restaurant) from obtaining a package store license under § 15. That restriction was struck by St. 1979, c. 721. But see the limitation appearing in the eighth paragraph of G. L. c. 138, § 17.

applicant, but the substitution lacked all economic substance. In the instant case there was evidence that the owners paid for the acquisition of Griffin with their own money and continued to support it with their own money.

2. *Consequences of the violation of G. L. c. 138, § 25.* The same facts which in our view do not constitute a transfer of Griffin's license do, however, speak eloquently of the receipt of credit by Griffin from the Turners and the entities which the Turners controlled. Griffin does not deny this. It contests the power of the commission under G. L. c. 138, § 64, to revoke Griffin's license for this infraction. Section 64, as appearing in St. 1934, c. 385, § 20, provides that the "licensing authorities" (which by a definition appearing in G. L. c. 138, § 1, include the commission) may revoke a license for "a violation of any condition thereof." This plenary authority, the commission argues, entitles it to revoke Griffin's license for the conceded violation of receiving credit from another licensee. Paragraph five of § 25, as appearing in St. 1968, c. 574, § 1 (then paragraph four), however, provides that if "the commission finds that any licensee has violated this section or participated in such violation, the commission shall suspend the license of the licensee until full discharge of the indebtedness." Paragraph six of § 25 as so appearing also mandates the imposition of a fine for a violation of "any provision of this section." The mandatory "shall" in the fifth and sixth paragraphs of § 25 removes discretion from the commission to impose greater or lesser penalties. *City Bank & Trust Co.* v. *Board of Bank Incorporation,* 346 Mass. 29, 31 (1963). The specific provisions of § 25 supersede the general provisions which appear in § 64. *Pereira* v. *New England LNG Co.,* 364 Mass. 109, 118 (1973). The appropriate sanctions for violation of § 25, therefore, are a suspension of Griffin's license until it no longer receives credit from licensees under chapter 138 (except in the ordinary course of business) and the imposition of fines on Griffin and the other licensees who violated § 25 by extending credit.

Accordingly, the judgment is reversed and the matter is to be remanded by the Superior Court to the commission for the imposition of sanctions consistent with this opinion.

*So ordered.*