Fremont-Smith, J.
This action arises out of a decision by the Board of Registrars of Voters of the City of Lawrence refusing to certify a petition to recall the Mayor, based on the Board’s finding after an evidentiary hearing, that the petition for recall contained an insufficient number of valid signatures. The proponents of the recall then brought this action alleging that the Board’s decision should be set aside as unsupported by any substantial evidence, as based on an error of law, or as arbitrary or capricious. See M.G.L.c. 30A§14(7).
After reviewing the administrative record and considering the briefs and oral arguments of all parties and the amicus curiae brief of the Secretary of State, the Court renders the following findings, rulings and judgment:
On November 2, 1993, Mayor Mary Claire Kennedy was elected over her opponent by only fifteen votes. Her opponent filed suit in 1994 for a de novo review of the recount. After trial, judgment entered upholding the recount, and that case is now on appeal.
On September 28, 1994, a group of Lawrence voters filed the recall petition with the City Clerk which is the subject of this action.
The legal procedure for a recall election in Lawrence is complicated and convoluted. The Lawrence City Charter, §9.7, provides that, at any time not less than twelve months before the expiration of an official’s term of office, one hundred or more voters may file with the city clerk an affidavit containing the name of the official whose recall is sought and a statement of the grounds for the recall petition. The petitioners then have thirty additional days in which to collect signatures (on petition blanks demanding the recall) of at least fifteen percent of the total number of persons registered to vote at the preceding city election and to return and file the petition in the office of the city clerk.[3]
Within twenty-four hours of such filing, the clerk must submit the petition to the Board of Registrars of Voters (the “Board”) ’’who shall forthwith certify" on the petition the number of signatures that are valid voters’ names.
The procedure for this initial certification is set out in G.L.c. 43, §38:
Within five days after the filing of said petition the registrars of voters shall ascertain by what number of registered voters the petition is signed, and what percentage that number is of the total number of registered voters, and shall attach thereto their certificate showing the result of such examination.
See also G.L.c. 53, §§7 and 22A.
If the Board certifies that the petition has a sufficient number of valid signatures, the Ciiy Clerk is to “forthwith” submit the certified petition to the City Council.
When such certificate has been so transmitted, said petition shall be deemed to be valid unless written objections are made thereto by a registered voter of the city within forty-eight hours after such certification by filing such obj ections with the city council . . . and a copy thereof with the registrars of voters . . . Section seven of chapter fifty-five B shall apply to such objections, and the board of registration of voters shall transmit a copy of its decision to the city council. . . G.L.c. 43, §38.
Subsection (c) of the Lawrence City Charter provides:
Upon its receipt of the certified petition, the city council shall forthwith give written notice of said petition and certificate to the person whose recall is sought. If said officer does not resign his office within five days following delivery of said notice, the city council shall order an election to be held not less that thirty-five nor more than sixty days after the date of the registrars [sic] certificate of the sufficiency of the petition.
Article IX of the Bylaws and Rules and Regulations governing the Board of Registrars of Voters provides that “[o]bjections to certifications by the Board shall be made within two (2) working days of the issuance of the . . . certificate and are subject to the provisions of Section 9 of the City Charter, G.L.c. 55B, §7 and 950 *424 CMR 59.00.” G.L.c. 55B, §7, provides in relevant part that:
[ojbjections to certificates of nomination, nomination papers, or withdrawals for city offices, or to petitions for local ballot questions shall be filed with the City Clerk within two working days of the last day fixed for filing such nomination papers, withdrawals or petitions, or on the day on which certification of the names on a petition must be completed, whichever is later, except where city charters provide otherwise
Such Boards shall render a decision on any matter referred to them . . . not later than four days after the last day fixed for filing objections to such certificates . . . But such decision need not be rendered until fourteen days after the last day fixed for filing objections to a petition, if the timing of such decision will not thereby prevent the question from qualifying for the ballot not later than thirty days before any previously scheduled election at which the question could appear.
Article X of the Board’s Bylaws provides that hearings of the Board are governed by the regulations of the State Ballot Law Commission (SBLC) “the Commission,” 950 C.M.R. 59.01-59.03, as amended. 950 CMR 59.03 provides that the Standard Adjudicatory Rules of Practice and Procedure, 801 CMR 1.01, apply to all SBLC proceedings, with certain modifications. One such requirement makes it incumbent upon the objector to signatures (here, the Mayor) to provide a list of the challenged signatures, by page and line, and the reason each such signature is objected to, no later than three days before the hearing. 801 CMR 1.01 (8), as amended by 950 CMR 59.03(18). Another provision concerns the rules of evidence to be used at hearings before the Commission:
Evidence may be admitted and given probative effect only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs. Weight to be given evidence presented will be within the discretion of the Agency or Presiding Officer. Based on its experience that in general it is not the land of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs, the Commission will not admit in evidence affidavits bearing directly on an ultimate fact in dispute, such as a voter’s affidavit that the voter did or did not sign a nomination paper or petition, except upon motion for good cause shown. 801 CMR 1.01(10)(g)(2) as amended by 950 CMR 59.03(20A) (emphasis added).
Under the above legal framework, a duly-elected official in Lawrence, once notified of the certification of a recall petition, must either immediately resign or else stand for re-election within sixty days, unless that official, within just 48 hours, files detailed, line-by-line objections to the validity of signatures on the petition, and has provided notice of the basis for each such objection at least three days before commencement of a Board of Registrar’s hearing, which hearing must then be completed within 14 days of the notice of filing of the petition.
In attempted conformity to these procedures, after the September 28, 1994 petition was filed, the Board of Registrars initially certified 4,250[4] voters’ signatures, which exceeded (by 975) the number of signatures (15% of voters at the general election, 3,275) needed to proceed with the recall. On October 13, the City Council voted to notify the Mayor of the Board’s certification of the petition and, within the allotted 48 hours, the Mayor filed objections to the Board’s preliminary certification.[5]
On October 20, this Court (Richard Welch, J.) issued a preliminary injunction staying the effectiveness of the Board’s certification until the earlier of the date the Board ruled on the validity of the plaintiffs objections, or October 28 (Le„ within the requisite fourteen days provided for completion of a Board hearing following the filing of objections by the Mayor, under M.G.L.c. 55B, §7).
Beginning immediately after Justice Welch’s order, on Saturday, October 22, 1994, and continuing up to and including the last permissible day, October 27, 1994, the Board conducted an evidentiary hearing into the objections filed by the Mayor. During the proceedings, which comprised over twenty-two hours of hearing, the Board heard from approximately fifiy-eight witnesses and received sixty-four exhibits. The nature of the testimony consisted of expert opinion, citizens who reaffirmed their questioned signatures, citizens who testified that their signatures were forged or obtained by fraud, and citizens who testified they had been misled regarding the purpose of the petition.
At the hearing, the Board proceeded upon the legal assumption that the Mayor had the burden of proving, by a preponderance of the evidence, that a sufficient number of signatures on the petition (in this case, 976) were either forged or otherwise not certifiable.
At the hearing’s conclusion on October 27, the Board voted 3-2 to de-certify the recall petition, having concluded that there were insufficient valid signatures.
The parties agree that the scope of review is pursuant to M.G.L.c. 30A, §14. The Court may affirm, remand, set aside or modify the Board’s decision if it determines the decision is unsupported by substantial evidence, was based upon an erroneous interpretation of the law, or was arbitrary or capricious. M.G.L.c. 30A §14(7).[6] The Board’s decision will be upheld if supported by substantial evidence. Almeida Bus Lines, Inc. v. Department of Public Utilities, 348 Mass. 331, 341 (1965). In reviewing the Board’s decision, this Court is required to give “due weight to the experience, technical competence and specialized knowledge of the agency, as well as to the discretionary authority conferred to it.” Katz v. Massachusetts Commission Against Discrimination, 365 Mass. 357 (1974). To the extent that the agency makes a determination of fact, the agency’s finding must be permitted to stand unless it is unsupported by substan *425 tial evidence in the entire record. See Kahn v. Brookline Rent Control Board, 394 Mass. 709 (1985); Griffin’s Package Store, Inc. v. Alcoholic Beverages Control Commission, 12 Mass.App.Ct. 768 (1981).
Since the agency has been entrusted with the function of applying its administrative expertise to the determination of complex social, economic, and technical issues, the role of the judiciary in reviewing administrative agency actions is not to substitute its own view of the rightness of correctness of the agency’s decision for that of the agency. Traditional judicial review requires that the judiciary sustain and support the administrative agency’s decision regardless of whether or not the reviewing Court believes it would have reached the same decision if it had been given initial decisional responsibility for the decision. See, Schwartz, Administrative Law, §10.8 2d ed. (1984); Celia, Admin. Law and Practice, §1641 (1986).
The plaintiffs contend that their legal rights were violated by the Board in the following principal ways: (1) They contend that the Board did not provide the plaintiffs with adequate notice of the list of signatures which were being challenged by the Mayor; (2) the Board erroneously relied upon an affidavit of handwriting expert Barbara Harding; and (3) the Board improperly employed a “contamination theory” analysis to justify exclusion of the petition.
While the regulations do require that the names the objector seeks to challenge and the basis for each challenge be provided to the respondent three days before the start of the hearing (see 801 CMR 1.01(8), as amended by 950 CMR 59.03(18)) and while itis true that the signatures challenged by the Mayor were contained on three lists, of which only the first was provided to the plaintiffs before the start of the hearing, the Board delayed receiving evidence as to the petition sheets in question until plaintiffs’ counsel had been provided three days to review them. As the purpose of the notice requirement of 801 CMR 1.01(8) is to provide the proponents adequate time to study them and to develop a position as to their validity, they were not harmed by this departure from the rules. While a technical violation of the regulation, this procedure deprived neither party of due process by denying a reasonable opportunity, under the circumstances, to present or adequately oppose the evidence.[7]
At the hearing, the Board received the testimony of a handwriting expert, Barbara Harding (“Harding”), who testified that she compared the signatures on the petition with the corresponding signatures on each voter’s registration card, and concluded that 1,772 signatures on the petition were of questionable authenticity. Harding also described for the Board the method she used to determine, in each instance, the authenticity of signatures, thereby providing the Board members, as well as the petitioners, a basis for making their own comparisons.[8]
Plaintiffs also sought to discredit Harding by themselves introducing, at the hearing, exhibit no. 23, an October 12, 1994, letter from Harding to the Mayor, wherein she had stated that she questioned the authenticity of 1,772 signatures. Under cross-examination, she testified that she wished to confirm her opinion by further examining the signatures, by comparing the original documents rather than xerox copies. The Mayor then offered, later in the hearing, an affidavit from Harding which confirmed, after a comparison of the original documents rather than just of copies, her earlier opinion (first stated in her October 12th letter) that at least 1,772 signatures were invalid.
While the applicable regulations do provide that affidavits are not to be used except for “good cause,” the time constraints placed upon the Board could well be found to justify the acceptance of her affidavit, in view of plaintiffs’ earlier opportunity to cross-examine her on her substantially similar letter, which had already been introduced, at plaintiffs’ request, at the hearing. In any event, the acceptance of the affidavit was, at worst, harmless error. As the plaintiffs themselves had introduced evidence of Harding’s opinion letter with respect to the invalidiiy of the 1,772 signatures, and had been provided an opportunity to cross-examine her thereon, plaintiffs were not prejudiced by the Board’s consideration of this confirmatory affidavit, regardless of whether there was “good cause” for its submission.
Plaintiffs further claim that the Board erred when it relied on the so-called “contamination theory” to reject the entire recall petition. In addition to Harding’s testimony regarding the questionable 1,772 signatures, however, there was testimony regarding the use of forged signatures of deceased voters, the placement of voters’ signatures on the petition without prior permission, the misleading of voters as to the purpose of the petition, the obtaining of signatures on forms on which the purpose of the petition did not appear, the misleading of newly-registered voters to believe that signing the petition was part of the registration process, and the curious fact that five hundred of the seven hundred newly-registered voters signed the petition.[9] In addition, there was evidence that the names of fictitious or non-existent persons were listed, wrong addresses for voters were used, and the names of some voters were misspelled on the petition. Whether or not all of this comprised sufficient evidence for the Board to conclude, as some members apparently did, that there was pervasive fraud sufficient to invalidate the entire petition, see, e.g. Hebert v. Ballot Law Commission, 10 Mass.App.Ct. 275 (1980), there was substantial evidence upon which the Board majority could reasonably conclude, as it did, that there were insufficient valid signatures to require a recall election; i.e. that at least 976 of the signatures were invalid.
As noted above, under the standard of review of the Board’s decision under M.G.L.c. 30A, §14(7), a Court is to be highly deferential to an administrative Board on questions of fact and reasonable inferences which may be drawn therefrom. See Flint v. Commissioner of Public Welfare, 412 Mass. 416 (1992). The Court’s role *426 is merely to insure that the Board reasonably complied with the legal requirements of fair procedure and of the Lawrence City Charter and other applicable laws. See Chicopee Co-op Bank v. Board of Bank Incorporation, 347 Mass. 744 (1964). The Court finds that the Board, under the circumstances and in the limited time it had available, dealt as fairly as it could with the difficult and emotion-provoking issues thrust upon it, and that the Board’s decision not to certify the mayoral recall petition was supported by substantial evidence, was not contrary to law, and was not arbitrary or capricious.[10]
Finally, plaintiffs have challenged the impartiality of one or more of the Board members and sought their disqualification. The record, however, contains no concrete, substantial evidence of any conflict of interest sufficient to have required their disqualification.
In sum, the Board presumed that the Mayor had the burden of proof to rebut the presumption of regularity created by the Board’s initial certification. Four Thousand, Five Hundred Sixty-eight Registered Voters of Worcester v. City Clerk of Worcester, 392 Mass. 424 (1984) The Mayor here satisfied that burden.[11]
ORDER
Accordingly, the Court enters judgment for the defendants, and plaintiffs’ complaint is dismissed with prejudice.

The parties are in agreement that, based upon the total vote in the mayoral general election, 3,275 certified signatures were required for a recall election.

The Board, at the onset, voted to remove from the recall petition thirty-five additional signatures based on the signers’ affidavits to the effect that they had been misled into signing the petition. The propriety of allowing the withdrawal of these signatures is questionable. In McBride v. City of Chelsea, 18 Mass.App.Ct. 1113 (1984) (summary disposition) the Court noted that such “withdrawals after filing may (a) create confusion and unfairness by leaving circulators unsure whether they have obtained enough signatures, (b) permit opponents to pressure signers to withdraw after their names have become a matter of public record, and (c) generally render the initiative system cumbersome to administer and possible unworkable.” Memorandum and Order, entered October 2, 1984, at 11. The legality of this initial reduction in the number of signatures has no significance, however, in view of the Board’s later determination that at least 1,772 signatures were invalid.

The Mayor’s letter of objection, dated October 14, 1994, objected that “1,772 signatures are of questionable validity” and advised that she “had retained a recognized and acknowledged handwriting expert,” Barbara Harding. It stated that, based upon Harding’s analysis of 3,434 signatures, Harding had concluded that 1,772 are “probable forgeries.”

If a Court believes that a Board’s grounds for its decision are unclear or its decision was based upon an erroneous legal standard, the Court can remand the case to the Board for further proceedings. Dane v. Board of Registrars of Voters of Concord, 374 Mass. 152, 173 (1978). As jurisdiction was also invoked under Mass. G.L.c. 56 §59, this Court could also have ordered a de novo trial in the Superior Court. McCarthy v. Secretary of the Commonwealth, 371 Mass. 667, 676-77 (1977).

As noted above, the Mayor had been required to file line-by-line objections to the petition, which contained thousands of signatures, within only forty-eight hours, whereas the plaintiffs were afforded seventy-two hours to respond.

Plaintiffs question the sufficiency of Harding’s methodology, noting that she had spent only a few seconds examining each signature on the petition. But no rebuttal testimony was offered to indicate it would take a handwriting expert more than a few seconds to compare each signature on the petition with the corresponding signature on the registration card to be able to reach a conclusion as to its validity. Harding’s credibility was a matter for the Board to decide, and they decided to credit her testimony.

There was testimony that persons who were being newly registered during the petition drive were also asked to sign a recall petition sheet without being apprised of its purpose.

 Under the time constraints imposed by the statute and the Court, the Board obviously could not fully litigate the matter by calling each of the 1,772 challenged signatures to testify — a process which would have required weeks of testimony and cost over $50,000 in service fees alone.

 In McCarthy v. Secretary of the Commonwealth, 371 Mass. 667 (1977), the Supreme Judicial Court held that the severe time constraints on an independent candidate for filing original nomination papers and the principal objective of the election laws to ensure that the public will may be expressed through the electoral process, by permitting access by a candidate to the ballot, require that the burden of proof to challenge signatures on an original nomination petition be placed on the objector to the signatures. In a petition for a recall election, however, the shoe is on the other foot. The public’s will has been expressed, through a general election, and in a manner which can be expected to be more reliably reflected than by the results of a special “recall” election, where the electoral turn-out may be small. In a recall petition, moreover, the unreasonable time constraints for access to the ballot, which the SJC was concerned about in McCarthy, are not placed upon the petitioner, but rather upon the duly-elected official, who must object and provide the grounds for objection to each challenged signature within forty-eight hows and prove the invalidity of each signature at a hearing which must be completed within an additional fourteen days. In these circumstances, one may doubt whether the appellate courts of the Commonwealth would impose the same burden of proof on a duly-elected official to establish the invalidity of recall signatures as has been placed upon those objecting to signatures on an original nomination petition. Rather, the appellate courts might well conclude that the “expression of the public will” by way of a general election and the right of access by a candidate to the ballot should be safeguarded by requiring those seeking a recall election to prove the validity of challenged signatures. In any event, the Board did apply the McCarthy standard and found, on substantial evidence, that the requisite number of signatures were shown to be invalid.