Sikora, Mitchell J., J.
RULINGS
The court has considered the motion of the plaintiff John Doe No. 16297 for judgment on the pleadings; the cross motion of the defendant Sex Offender Registry Board (“SORB”) for judgment on the pleadings; the memoranda of law of both parties; the administrative record; and the oral arguments submitted by counsel for all parties at hearing.
The court now DENIES plaintiff John Doe’s motion for judgment on the pleadings. It ALLOWS defendant SORB’s cross motion for judgment on the pleadings.
ORDER FOR JUDGMENT
Judgment of affirmance of the administrative determination of John Doe in No. 16297 as a Level 3 sex offender shall now enter in favor of the defendant SORB and against the plaintiff John Doe No. 16297.
DISCUSSION
Background
On August 9, 2000, the plaintiff John Doe pleaded guilty in Middlesex Superior Court to three counts of rape and abuse of a child (in violation of G.L.c. 265, §23); four counts of indecent assault and battery upon a child under the age of fourteen (in violation of G.L.c. 265, §13B); dissemination of harmful materials to a minor (in violation of G.L.c. 272, §28); and two counts of offenses of contributing to the delinquency of a minor. He received concurrent four-and-one-half-year sentences at the Massachusetts Correctional Institution (MCI) Cedar Junction for the convictions of rape and abuse of a child and five years of probation to be served from and after his incarceration. For the offense of indecent assault and battery upon a child under fourteen, he received a concurrent two-to three-year commitment and a subsequent probation period of five years. For the convictions of dissemination of harmful material to a minor and for the offenses of a contributing to the delinquency of a minor, he received concurrent one-year commitments upon each count.
Reports of the Wilmington Police Department and of the Massachusetts Department of Social Services (DSS) recounted that John Doe (then age 31) had sexually assaulted his girlfriend’s daughter on numerous occasions over a two-year period. The victim was eleven years old at the outset of the offenses. She told police the following. During October of 1999 John Doe had given her alcohol and marijuana to get her high. Once she had become high, he would insert a vibrator into her vagina. He would place his tongue in her vagina and ask her to perform oral sex on him. John Doe also showed the victim pornographic pictures of himself with the mother of the victim in the course of sexual activity.
The victim stated that the last assault had occurred when she was thirteen years old; that John Doe had asked her to kiss him because he wanted to see whether she was a good kisser; that, as he kissed her, he placed his hands up her shirt and touched her breasts; and that he then caused her to remove her pants and underwear and place the vibrator inside her vagina.
During the next morning, according to the victim, John Doe asked her to use the vibrator on him. She had refused. He had removed his pants in front of her and had used the vibrator on himself. He had also made the victim hold the vibrator against his penis for a short period of time.
The victim later told her cousin about the details of the sexual assaults. The cousin told her mother. The cousin’s mother then notified the victim’s mother.
John Doe testified at the SORB adjudicatory hearing. He admitted the commission of the assaults as detailed in the police reports and in the reports of the Department of Social Services. Also, he stated his remorse for his offenses and stated his empathy for the victim.
John Doe has now completed his sentences. He is engaged in probation. He has undergone classification. The SORB hearing officer determined by means of a substantial and detailed decision that a classification of Level 3 was appropriate. Doe has now appealed to the Superior Court under the standards of the Administrative Procedure Act, G.L.c. 30A, §14(7).
The Issues
Under G.L.c. 30A, §14(7), Doe asserts three distinct bodies of argument. One is that the SORB has made its classification without the support of requisite expert evidence (Memorandum Part IV, pp. 11-19). One may view this argument as an assertion of the lack of support of substantial evidence under §14(7)(e) or as an error of law under §14(7)(c). Second, Doe asserts *482 more generally that the decision of classification lacks the support of substantial evidence (Memorandum Part V, pp. 19-22; and Part VI, pp. 22-25). Third, Doe argues that the classification constitutes an error of law and constitutional violations in the nature of the imposition of double jeopardy, ex post facto punishment, cruel or unusual punishment, violation of family integrity, violation of due process privacy rights, and violation of due process liberty rights, apparently under §§14(7) (a) and (c).
The parties have briefed the issues thoroughly. I will address each body of argument in turn.
I. The Omission of Expert Testimony
For several reasons I conclude that expert evidence is not mandatory for a finding of high risk of reoffense and of a high degree of dangerousness warranting Level 3 classification.
First, the language of the enabling legislation omits such a requirement. The Sex Offender Registration Act, G.L.c. 6, §178L(2), requires the Board to support a classification by a “preponderance of the evidence” without further elaboration. An adjacent section characterizes the role of expert testimony as discretionary rather than imperative. “(T]he board may grant payment of fees for an expert witness in any case where the board in its classification proceeding intends to rely on the testimony or report of an expert witness prepared specifically for the purposes of the classification proceeding.” G.L.c. 6, §178L(l)(c) (emphasis supplied). The Legislature could have, but did not, choose to include a necessary role for expert testimony in the classification process. By contrast, in the same body of legislation, it expressly required the participation of “qualified examiners” injudicial proceedings for the determination of the likelihood of reoffense by “sexually dangerous persons” subject to a “mental abnormality” or “personality disorder” justifying indefinite civil commitment. St. 1999, c. 74, §8, codified as G.L.c. 123A, §§12 and 13. The SORB-related provisions of St. 1999, c. 74, make no comparable reference to required use of experts.
Second, an important practical or functional consideration reinforces the literal analysis. The SORB classification process does not require a finding of “personality disorder” or “mental abnormality.” The technical character of those determinations necessitates evidence of expert caliber. Their absence from the SORB classification would appear to leave such evidence optional.
Third, the Legislature furnished alternative means of competent determination of classification. It required the Board’s seven members to include licensed psychologists and psychiatrists with “special expertise in the assessment and evaluation of sex offenders,” criminal justice professionals, and an expert in the study of victims of sexual abuse. G.L.c. 6, §178K(1). In turn, this membership had the duty to promulgate rules “for determining the level of risk of reoffense and the degree of dangerousness posed to the public . . .” Id. In effect, the Legislature directed SORB to embody a substantial measure of expertise in the standards and guidelines controlling the classification process.
Fourth, the number and detail of those statutory and regulatory criteria do appear to embody expertise, rationality, and accountability for a classification decision. The system is one of visible and enforceable standards for application by the administrative factfinder, the Board, and the reviewing courts. The statute and the implementing regulations enumerate twenty-four criteria or risk factors for consideration. The factors indicate a greater or lesser degree of probability of reoffense and of dangerousness. See G.L.c. 6, §178K(1)(a-l); and 803 CMR §1.40. As discussed below, these furnish comprehensive guidance to the administrative factfinder in lieu of expert testimony.
Finally, practical considerations could reasonably support a legislative exemption of expert testimony. The Board points out that the risk of reoffense need not always be a question for expert guidance; factfinders typically gauge that probability, without expert contribution, in the determination of ball, sentencing, and parole questions. A further practical consideration inferable from the legislative omission is that mandatory expert testimony in every SORB classification proceeding would impose overwhelming burdens of cost, administration, and delay. Those burdens may be constitutionally necessary in an SDP program leading to indefinite loss of freedom, but not in the SORB process of classification and dissemination without confinement.
II. The Hearing Examiner’s Decision Had the Support of Substantial Evidence
Several familiar corollaries of administrative law control judicial review of an agency determination. The court must give “due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14(7), penultimate paragraph. Here the registrant contends that the hearing officer’s Level 3 classification is arbitrary or capricious for lack of supporting substantial evidence within the meaning of G.L.c. 30A, §§14(7)(e) and (g).
“Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6) [emphasis supplied]. In the assessment of underlying evidence as substantial or less, the reviewing court cannot displace an agency’s choice between two fairly conflicting views even though the court would justifiably have made a different choice as the original factfinder. Embers of Salisbury v. ABCC, 401 Mass. 526, 529 (1988) (cases collected); Southern Worcester City Regional Vocational School District v. Labor Relations Commission, 377 Mass. 897, 903 (1979); and Hotchkiss v. State Racing Commission, 45 Mass.App.Ct. 684, 695-96 (1998). *483 Importantly, however, the court must take into account evidence or information in the record tending to subtract from the weight of the evidence supporting the administrative findings. New Boston Garden Corporation v. Board of Assessors of Boston, 383 Mass. 456, 466 (1981); Arthurs v. Board of Registration in Medicine, 383 Mass. 299, 304 (1981); and Griffin’s Brand Rock Package Store, Inc. v. ABCC, 12 Mass.App.Ct. 768, 770 (1981). I apply these standards to the findings of the hearing officer.
In the course of his decision, the hearing officer identified fifteen evidentiary factors indicative of a high risk level. A number of those evidentiary factors, as applied to the circumstances of this case, seem to me to be overlapping or somewhat repetitive. I do perceive the following distinctive elements of evidence. (1) Doe’s offenses involved a child and a degree of intrusive violence upon the child, an indicator of increased risk to children as an especially vulnerable class. (2) Doe’s later offensive acts occurred at a time when he had lived outside the victim’s home for approximately one to two years, an indicator of a willingness to offend against persons beyond an immediate physical or emotional relationship. (3) Doe used drugs and alcohol to render the victim more susceptible to sexual assault, an exceptionally guileful modus operandi especially against the vulnerability of children. (4) Doe’s pattern of offense extended across a substantial duration of approximately two years, a suggestion of its compulsive nature. (5) The offenses included an extraordinary degree of physical contact with the victim. (6) The records of Doe at the Massachusetts Treatment Center showed a lack of empathy for the victim. (7) Doe has a lengthy criminal history for separate medium-to low-grade non-sexual offenses, a sign of antisocial habits indicative of a greater risk of reoffense. (8) Doe has been free in the community for less than two years; the first five years of freedom are the span of highest risk of reoffense. (9) His criminal record shows that he was already engaged in probation at the time of his sexual offenses against the victim. (10) Doe never finished his sex offender treatment program during incarceration. This factor gained some weight because he exhibited “significant arousal to deviant scenes” during administration of a Phallometric assessment in January of2003. (11) The hearing officer observed that Doe had had a history of drug and alcohol abuse until 1999; and that such abuse appeared to trigger a pattern of antisocial behavior; and that a relapse into substance abuse would raise the risk of reoffense.
The hearing officer identified several countervailing elements of evidence weighing against dangerousness and the risk of reoffense. (1) Doe lacked convictions for non-sexual crimes of violence. (2) Doe was engaged in a cognitive-behavior relapse prevention model sex offender specific treatment program with a licensed medical health professional. (3) Doe will have the structured supervision of probation until 2009. (4) The hearing examiner determined that Doe did not suffer from a mental abnormality.
The net calculus of these evidentiary considerations on the part of the hearing officer was the determination of “a high risk of reoffense and a high degree of dangerousness.” I might be more inclined to give greater credit to Doe in several respects. First, he voluntarily undertook offender treatment during incarceration, completed the first three phases of the program, and almost completed the fourth, final, and most rigorous phase of treatment at the Massachusetts Treatment Center. After release, he continued the therapy of treatment by participation in a program with a highly respected clinician. In addition, he appeared at the SORB hearing and expressed remorse, empathy, and a degree of introspection. Still further, he has been free of substance abuse for more than six years, at least since 1999, or before his incarceration. He presently has some family structure. He resides with his mother, spends time with his children, maintains employment, and pays child support. These latter factors make the classification determination a closer decision for me than it appears to have been for the hearing officer. They place the decision in the borderland of Level 3 and Level 2.
However, the reviewing judge cannot substitute his determination for the one made by the administrative factfinder between “two fairly conflicting views.” I must, and I do, defer to the judgment of the first-hand trier of fact. In particular, he enjoyed the advantage of direct observation of Doe as a witness. His determination of credibility has special value. A reviewing authority has no comparable opportunity to assess the critical factor of credibility. Morris v. Massachusetts Board of Registration in Medicine, 405 Mass. 103, 109-14 (1989); Vinal v. Contributory Retirement Appeal Board, 13 Mass.App.Ct. 85, 94-95 & n.6 (1982); and Universal Camera Corporation v. NLRB, 340 U.S. 474, 496-97 (1955).
III. Level 3 Classification and Dissemination Do Not Violate Legal Standards Forbidding (A) Double Jeopardy, Ex Post Facto Laws, and Cruel and Unusual Punishment; and (B) Invasion of Privacy and Disruption of Family Integrity.
John Doe’s final body of argument consists of claimed violations of constitutional standards presumably under G.L.c. 30A, §14(7)(a).
A. The Claims of Double Jeopardy, Ex Post Facto Action, and Cruel and Unusual Punishment.
The constitutional and common-law prohibitions against double jeopardy, ex post facto laws, and cruel and unusual punishment aim at criminal prosecution and punishment, and not at civil legislation regulating behavior for the purpose the public health, safeiy and welfare. It is settled under both federal and Massachu *484 setts constitutional doctrine that sexual offender registration laws are civil and remedial, and not primarily punitive in their purposes. See Smith v. Doe, 538 U.S. 84, 95-96 (2003); Kansas u. Hendricks, 521 U.S. 346, 361 (1997); and Commonwealth v. Bruno, 432 Mass. 489, 500 (2000).
A party challenging a facially civil remedial statute (purporting to protect the public safety rather than to punish violators of the public safety) must provide “the clearest proof’ that the legislation is so punitive in either intent or effect that it negates its characterization as “civil.” Dutil, Petitioner, 437 Mass. 9, 20 (2002). A regulatory statute causing incident punitive or deterrent consequences does not lose its civil remedial character so long as its primary purpose serves the public safety and welfare. Opinion of the Justices, 423 Mass. 1201, 1222-23 (1996); Hill, Plaintiff, 422 Mass. 147, 153 (1996), cert. denied, 519 U.S. 867 (1996). The purpose of the sexual offender registry law is facially civil and regulatory: the reduction of danger to the community. St. 1999, c. 74, §1. Opinion of the Justices, 423 Mass. at 1227.
As a result, the classification and dissemination measures of the Massachusetts legislation do not violate the federal and state prohibitions against double jeopardy, Opinion of the Justices, 423 Mass. 1201, 1240-42 (1996); and Commonwealth v. Stone, 45 Mass.App.Ct. 259, 260-61 (1998). Nor do they contradict the ban against cruel and unusual punishment. Opinion of the Justices, 423 Mass. at 1238. Nor are they likely to offend the standard against ex post facto criminal legislation. Commonwealth v. Bruno, 432 Mass. 489, 499-502 (2000).
B. The Claims of Harm to Privacy and to Family Integrity.
Doe points out that classification and dissemination will endanger his residency, employment or business, and family tranquillity and integrity. The risk of these consequences, especially to the family members, is regrettable. However, as a matter of law, that risk appears to be an incidental cost of a public safety purpose: notice to the community of the risk of recidivism by a convicted sexual offender. Additional cases may fill out this reasoning. At present the interests of privacy and family integrity are not likely to override the public safety purpose of the law. See Opinion of the Justices, 423 Mass. at 1234. The more probable relief for those incidental burdens is the entitlement of the offender to seek to terminate registration by clear and convincing proof of the unlikelihood of danger to others after the requisite post-release period. G.L.c. 178G, penultimate sentence.
Conclusion
For these reasons the court affirms the decision of the defendant Sexual Offender Registry Board.